McCOY, Appellant,

v.

McCOY, n.k.a. Greiner, Appellee.

[Cite as *McCoy v. McCoy* (1995) 105 Ohio App.3d 651.]

Court of Appeals of Ohio,
Fourth District, Meigs County.

No. 94–CA–13.

Decided Aug. 18, 1995.

*Pat Story,* for appellant.

*Anna Belle Greiner, pro se.*

HARSHA, Judge.

In an appeal from a judgment denying appellant's motion for modification of child support, appellant Byron McCoy raises the following assignments of error:

"Assignment of Error No. 1:

"The trial court erred by including a nonrecurring or unsustainable income of cash flow item ie. [sic] an employee buyout payment or separation allowance of $43,325.00, in calculating plaintiff-appellant's gross income for child support purposes for the years 1993, 1994 and 1995. (June 21, 1994 entry).

"Assignment of Error No. 2:

"The trial court erred when in its June 21, 1994 entry it calculated the amount of plaintiff-appellant's child support obligation without actually completing a child support computation worksheet and making that worksheet a part of the trial court's record. (June 21, 1994, entry)."

A review of the record indicates that the parties were married in September 1980, and had four children. They were divorced in December 1991. The court imposed a child support obligation on appellant, Byron McCoy, of $204 per month plus poundage. This support order was based on a court determination that appellant's full-time employment with the CSX Railroad Company (five days per week) and his part-time employment at the U.S. Postal Service (one day per week) provided him a total annual income of $36,000. The court also found that appellee's annual income from her employment as a clerk was $12,000.

Subsequently, the CSX Railroad Company informed Byron McCoy that his full-time employment with it could not continue in its present form. The company provided Mr. McCoy with several options: (1) procuring comparable employment in Jacksonville, Florida; (2) continuing with the CSX Railroad Company without the possibility of receiving "monetary protection"[1]; or (3) terminating his employment with the company and taking a $43,325 lump sum "separation payment."

Mr. McCoy selected the third option. Upon terminating his employment with the CSX company, Mr. McCoy retained only his part-time job with the U.S. Postal Service. In this position, Mr. McCoy works one day per week, and receives approximately $13 per hour. He has no other employment.

On March 3, 1994, Mr. McCoy filed a motion to modify child support with the Court of Common Pleas of Meigs County. He asserted as grounds for the modification of child support that termination of his employment with the CSX company was a significant change in circumstances. Appellant asserted that the money he received upon the termination of his employment with the CSX

---

1. Mr. McCoy's employment with the CSX company provided him with a guaranteed salary regardless of whether the company needed him to perform work for it. Mr. McCoy was expected to be "on call" to work for the company Monday through Friday. Had Mr. McCoy chosen the second option, he would have no longer had "monetary protection." That is, he would only have been paid for the work he performed, receiving no compensation for any unworked hours.

company should not be included in his gross income for purposes of figuring child support, and that only the wages he earned through his part-time employment as a U.S. postal carrier should be considered for the purposes of figuring this obligation.

After the trial court conducted an evidentiary hearing on the matter, it journalized its findings and orders in an entry dated June 21, 1994. The court found that the one-time payment received by appellant was a "buyout," and ordered it included in appellant's gross income for purposes of child support calculations. However, the trial court failed to include a child support worksheet as required by R.C. 3113.215 in determining appellant's child support obligation. Appellant, unsatisfied with the trial court's ruling, filed this appeal.

Several months later, in a contempt proceeding dealing with Mr. McCoy's failure to comply with his amended child support obligation, the trial court ordered the Meigs County Child Support Agency to prepare a child support worksheet to support its June 21, 1994 order.

For purposes of analytical clarity, we begin by addressing appellant's second assignment of error. Mr. McCoy asserts that the trial court committed reversible error by failing to use a child support worksheet in calculating his child support obligation and by failing to include such a worksheet in the record for our review. For the reasons stated below, we disagree.

When a trial court considers a motion for modification of child support, it must follow the procedure contained in R.C. 3113.215(B)(4). See *Marker v. Grimm* (1992), 65 Ohio St.3d 139, 601 N.E.2d 496; *Ohler v. Ohler* (Sept. 16, 1994), Fulton App. No. 93FU000014, unreported, 1994 WL 506158; *Justinger v. Schlegel* (Sept. 26, 1994), Paulding App. No. 11–94–2, unreported, 1994 WL 521205; *Blake v. Blake* (May 4, 1995), Gallia App. No. 94CA16, unreported, 1995 WL 273846. R.C. 3113.215(B)(4) requires a trial court to "recalculate the amount of support that would be required to be paid under the support order in accordance with the schedule and pursuant to the applicable worksheet." The Revised Code describes the "applicable worksheet" in R.C. 3113.215(E) and (F). The worksheet outlines the financial status of both the parties and allows for a thorough consideration of financial issues that affect the determination of child support. Figures from the worksheet are used in conjunction with a child support schedule contained in R.C. 3113.215(D)(1) to determine the amount of child support which must be paid.[2]

---

**2.** We note that neither party contests the court's finding that Mr. McCoy's termination was a significant change of circumstances, *i.e.*, the court was authorized to modify the then-current support order.

■ Normally, we review the actions of a trial court concerning domestic relations issues on an abuse of discretion standard. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 218–219, 5 OBR 481, 481–483, 450 N.E.2d 1140, 1141–1142. However, the Supreme Court recently held in *Marker*, 65 Ohio St.3d at 143, 601 N.E.2d at 498–499, that the terms of R.C. 3113.215 are "mandatory and must be followed literally and technically in all material respects." *Marker* requires the trial court to act in "strict compliance with the provisions of the statute." *Id.* at 143, 601 N.E.2d at 499; *Justus v. Justus* (Oct. 27, 1993), Gallia App. Nos. 92CA24 and 92CA37, unreported, 1993 WL 436033. See, also, *Justinger, supra.*

■ We recognize that evidence regarding the financial status of each party was presented at the hearing and is contained in the court's record. However, R.C. 3113.215 requires the trial court to use a worksheet containing this information. The trial court had the responsibility to ensure that the child support calculations were made using the worksheet and the schedule. *Marker, supra,* 65 Ohio St.3d at 142, 601 N.E.2d at 498–499; *Blake, supra.* Without a completed worksheet, it is impossible to utilize the child support table contained in R.C. 3113.215(D), or to determine if the table is even applicable.

Trial courts must also ensure that the completed worksheet is included in the record. See *Marker* at 142, 601 N.E.2d at 498–499; *Loving v. Balazs* (Nov. 18, 1994), Lake App. No. 94–L–021, unreported, 1994 WL 660621; *Tarver v. Payne* (Nov. 3, 1994), Cuyahoga App. No. 67079, unreported, 1994 WL 615033; *Justinger, supra.*

Clearly, a trial court is required to utilize a worksheet in its determination of a motion to modify child support. *Marker* and *Loving, supra.* If the trial court intends to adopt worksheets submitted by a party, the worksheets must be completed, signed by both parties, dated and notarized. See R.C. 3113.215(E); *Marker, supra,* 65 Ohio St.3d at 142, 601 N.E.2d at 498–499; *Justinger* and *Blake, supra.* In the present case, there simply is no such worksheet. The worksheet submitted by appellee is not signed, dated or notarized, as is required under R.C. 3113.215(E). Worksheets submitted to the court by the parties are not binding on the court. They may be adopted by the court only if they meet the requirements of R.C. 3113.215(E).

A worksheet that was completed in November 1994, months *after* the trial court's June 21, 1994 entry, also appears in the record. This worksheet was prepared not by the court but by the Child Support Enforcement Agency for Meigs County. However, it is clear that the court adopted it as its own. The inclusion of this worksheet in the record long after the court has already entered a child support order "based" upon those calculations is not in "strict compliance" with R.C. 3113.215. However, we do not believe it is reversible error in this case.

A primary purpose for including the worksheet in the record is to ensure meaningful appellate review of the trial court's actions. *Marker, supra.* Here, it would make little sense to remand the matter for recalculation under a new worksheet which contains the same information as the one in the record. Because effective appellate review is not precluded by utilizing the November 1994 worksheet, we find the error, if any, to be harmless. Accordingly, appellant's second assignment of error is overruled.

In his first assignment of error, appellant protests the trial court's characterization of his $43,325 "buyout" payment from the CSX company as gross income for child support purposes. Appellant does not expressly state the standard of review on this issue, but we believe, since it is necessarily a factual inquiry, that it presents a manifest weight of the evidence question. See *Foster v. Foster* (Mar. 3, 1993), Pike App. No. 490, unreported, 1993 WL 63382; *Wright v. Wright* (Nov. 10, 1994), Hocking App. No. 94CA02, unreported, 1994 WL 649271. An appellate court will not reverse the decision of a trial court as against the manifest weight of the evidence if the trial court's decision is supported by any competent, credible evidence which goes to all the essential elements of the case. *Security Pacific Natl. Bank v. Roulette* (1986), 24 Ohio St.3d 17, 20, 24 OBR 14, 16–17, 492 N.E.2d 438, 440–441; *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 280, 8 O.O.3d 261, 262, 376 N.E.2d 578, 579. This standard of review is highly deferential. Even "some" evidence is sufficient to sustain the verdict and prevent a reversal if it applies to all the essential elements of the case.

We begin with a review of the definition of "gross income." "Gross income" for purposes of child support is defined in R.C. 3113.215(A)(2) as:

" * * * except as excluded in this division, the total of all earned and unearned income from all sources during a calendar year, whether or not the income is taxable, * * * includ[ing], but not limited to, income from salaries, wages, overtime pay and bonuses to the extent described in division (B)(5)(d) of this section, commissions, royalties, tips, rents, dividends, *severance pay*, pensions, interest, trust income, annuities, social security benefits, workers' compensation benefits * * *." (Emphasis added.)

"Gross income" includes "severance pay," but not "nonrecurring or unsustainable income or cash flow items." R.C. 3113.215(A)(2). Severance pay is not defined by the statute, but according to common usage means "payment by an employer to employee beyond his wages on termination of his employment. Generally, it is paid when the termination is not due to employee's fault and many union contracts provide for it." Black's Law Dictionary (5 Ed.Rev.1979) 1232. "Nonrecurring or unsustainable income or cash flow items" include "any income or cash flow item that the parent receives in any year or for any number of years

not to exceed three years and that the parent does not expect to continue to receive on a regular basis," but do not include "a lottery prize * * * not paid in a lump sum or any other item * * * that the parent receives or expects to receive for each year for a period of more than three years or that the parent receives and invests or otherwise utilizes to produce income or cash flow for a period of more than three years." R.C. 3113.215(A)(11).

Accordingly, if the cash payment from the CSX Railroad Company to appellant is a "nonrecurring or unsustainable income or cash flow item," it may not be included in appellant's gross income for purposes of child support calculation. However, if it is "severance pay," the trial court was correct in including it.

■ The trial court's entry awarding child support indicates that the $43,325 payment is a "buyout" rather than severance pay. However, the "buyout" was a cash payment provided to him in a lump sum upon termination of employment without fault. The trial court effectively considered the payment to be severance pay and we agree. There is competent, credible evidence to support this finding. Specifically, the "buyout" was paid upon appellant's termination and represented a sum beyond wages. Furthermore, it is clear that the termination was not due to any fault of the appellant.

■ In so holding, we note that the generic language of the statute referring to "nonrecurring or unsustainable income or cash flow items" cannot be used to exclude a specifically defined category of gross income. Where the legislature has specifically included severance pay in "gross income," the courts are not free to construe general language of the statute in a manner that renders specific enumerations meaningless.

Appellant's first assignment of error is meritless and the judgment of the trial court is affirmed.

*Judgment affirmed.*

PETER B. ABELE, P.J., and STEPHENSON, J., concur.