Appellant, Michael A. Doley, appeals the decision of the Lake County Court of Common Pleas, Domestic Relations/Juvenile Division which granted a divorce to appellant and appellee, Maureen Kelly-Doley.[1] For the reasons that follow, we affirm the judgment of the trial court in part, reverse in part, and remand for further proceedings consistent with this opinion.
The parties were married for approximately ten years at the time the final contested hearings for divorce came before a magistrate in March, May, and July 1995. One child was born of the marriage. She was seven years old at the time of the final hearings.
The record reveals that appellant is a retired policeman and fireman. He became disabled as a result of his employment and receives a tax-free disability income of $21,500 per year. His testimony established, however, that he was not totally disabled and that he was able to drive, play in a bagpipe band, cut grass and perform other physical activities. He was also employed in 1994 and 1995 as a part-time investigator for a company called Spencer Consulting Services, earning between $15 and $25 per hour. However, he earned very little from this position in 1994 and 1995.
Appellee is a physician's recruiter for a hospital. She earns approximately $46,000 per year with occasional bonuses. She was the primary caregiver for the child since her birth. Although all parties conceded that appellant loved his daughter, it was established that he was not very involved in her daily care, if at all. This was particularly true during her early years.
It was also established that appellant displayed threatening, abusive and vile behavior towards appellee, often in the presence of the child. Appellee testified to various incidents throughout the marriage and prior to the divorce in which appellant: (1) held a gun to her head for ten minutes after he had been drinking; (2) charged at appellee and pushed her in a snow drift during one visitation incident; (3) called her vile names in public at a school recital for the child; and (4) made various other threats that he would harm her. One of these was appellant's alleged joke that "[a] bullet is cheaper than a divorce." Appellant conceded to the same at the hearings.
Notably, there was no testimony that appellant ever abused or harmed the child, except through his active contempt and hostility shown toward the child's mother. There was also testimony that he loved the child, that he and the child had a good relationship and that since the time the divorce proceedings began, he desired to spend more time with her and to become more involved in her life.
The magistrate issued her decision on March 7, 1996. Appellant objected in writing to various findings of the magistrate and provided the transcript of the hearings for the trial court's consideration. A hearing was held on the objections. The trial court indicated that it considered the transcript and issued a decision on appellant's objections, sustaining in part, and overruling in part, various objections. The trial court entered its final judgment entry of divorce on November 12, 1996.
Among the pertinent findings and orders of the trial court, appellant's request for shared parenting was denied and appellee was granted sole custody of the child. Appellant was granted standard visitation with the child. However, the parties were ordered to attempt to enlarge that visitation voluntarily.
In addition, the trial court adopted the magistrate's finding that appellant was voluntarily underemployed and that income should be imputed to him in the amount of $9,300 per year. Appellant's child support was set at $370.25 plus poundage per month.
Finally, the trial court adopted the magistrate's finding that appellant should pay appellee attorney fees in the amount of $2,250. The court found that the record substantiated that at least fifteen hours were expended on superfluous matters resulting from the conduct of appellant during the course of the proceedings. No other spousal support was awarded to either party and the property was essentially divided equally.
Appellant perfected a timely appeal, asserting four assignments of error:
 "[1.] The Trial Court abused its discretion and committed prejudicial error when it failed to prepare a worksheet and to make the worksheet part of the record.
 "[2.] The Trial Court Abused Its Discretion and Committed Prejudicial Error When It Imputed Income to Defendant Without Requiring Any Evidence Defendant Was Voluntarily Unemployed Within The Meaning of R.C. 3113.215.
 "[3.] The Trial Court Abused Its Discretion and Committed Prejudicial Error When It Awarded Plaintiff Attorney's Fees Without Considering The Factors of Need and The Ability to Pay as Required Under R.C. 3105.18(H).
 "[4.] The Trial Court Abused Its Discretion and Committed Prejudicial Error When It Denied Defendant's Request for Shared Parenting without Considering the Factors Required under R.C. 3109.03."
In his first assignment of error, appellant asserts that the child support order should be reversed and remanded because neither the magistrate nor the trial court completed a child support computation worksheet as required by R.C. 3113.215 and the ruling of the Supreme Court of Ohio in Marker v. Grimm
(1992), 65 Ohio St.3d 139, paragraph one of the syllabus. InMarker, the court held:
 A child support computation worksheet, required to be used by a trial court in calculating the amount of an obligor's child support obligation in accordance with R.C. 3113.215, must actually be completed and made a part of the trial court's record." Id. at paragraph one of the syllabus.
The Marker court further indicated that "[t]he terms of R.C.3113.215 are mandatory in nature and must be followed literally and technically in all material respects." Id. at paragraph two of the syllabus. The court explained:
 " * * * [A] review of R.C. 3113.215 leads us to the conclusion that the statute mandates that a court 'use' a worksheet identical in content and form to the R.C. 3113.215(E) or (F) model worksheet, and that the amount of an obligor's child support obligation must be calculated 'in accordance with,' and 'pursuant to,' the basic child support schedule and appropriate worksheet. * * *
 "The responsibility to ensure that the calculation is made using the schedule and worksheet rests with the trial court. R.C. 3113.215(B)(1) provides that the court, in performing its duties under the statute, is not required to accept any calculations in a worksheet prepared by any party to the action or proceeding. As R.C. 3113.215 requires the applicable worksheet to be completed, there is every reason to require that the trial court include that document in the record. Only in this fashion can appellate courts be assured that the literal requirements of R.C. 3113.215 have been followed, and that an order or modification of support is subject to meaningful appellate review." (Emphasis sic.) Id. at 142.
In the case at bar, it is true that the magistrate did not personally complete the required child support worksheet or attach it to her decision. Nor did the trial court do the same. However, the magistrate indicated that she had reviewed appellee's submitted child support worksheet and that she was adopting appellee's figures for appellant's child support in the amount of $370.25 per month.[2] As will be discussed below, the worksheet imputed income to appellant as well.
While appellee's submitted worksheet appears to be identical in content and form to the model worksheet in R.C. 3113.215(E), and was indeed made part of the record, the worksheet was not fully completed. Specifically, the worksheet was not signed by the parties or their attorneys; there was no indication of whether the parties were consenting to the worksheet; and the worksheet was not notarized as the form in R.C. 3113.215(E) requires.
We are not the first court to face this situation following the pronouncement of the Supreme Court of Ohio inMarker. Unfortunately, however, there appears to be a split in the appellate districts on this issue. In the first instance, the Twelfth Appellate District has held that only the trial court may compile the worksheet or adopt one compiled by a magistrate, and that the trial court may not merely adopt by reference worksheets that have been completed by either party.In re Krechting (1996), 108 Ohio App.3d 435, 437.
On the other hand, the Fourth Appellate District has held that worksheets submitted by the parties may only be adopted by the trial court if they meet the requirements of the model form in that they contain the signatures of the parties, dates andnotarization. McCoy v. McCoy (1995), 105 Ohio App.3d 651, 655. This decision was followed by the Third Appellate District inHolman v. Miller (Nov. 28, 1997), Seneca App. No. 13-97-38, unreported, 1997 Ohio App. LEXIS 5500.[3]
We concur with the holding in McCoy. This decision gives effect to the statute and the indication in Marker that the statute is to be applied literally, while at the same time allowing for more flexibility for magistrates and trial courts in child support proceedings. Indeed, by requiring the parties to fully complete the worksheet, both the magistrate or trial court and the parties will be in a better position to know whether contested issues exist in regards to the figures used in the worksheet. This is so because the model form requires each parent to indicate whether he or she consents to the worksheet.
Consequently, we hold that a magistrate or trial court may adopt a party's child support worksheet if it is (1) submitted in the record; (2) fully completed, signed, consented to or not consented to, and notarized as the model form indicates; and (3) clear that the magistrate or trial court intended to adopt the submitted worksheet as its own. We caution that if the magistrate or trial court desires to deviate from a submitted worksheet in any way, the magistrate or trial court may no longer rely on the party's worksheet and a new worksheet must be completed.
As the instant child support worksheet fails to comply with the above standard, we must reverse and remand the matter for the trial court to ensure that a fully completed worksheet is made part of the record. Moreover, as will be indicated in the second assignment, a new determination of imputed income to appellant is needed in any event. Appellant's first assignment of error is with merit.
In the second assignment of error, appellant argues that the trial court erred by adopting the magistrate's finding that he was voluntarily underemployed and that income should be imputed to him as a result of that finding. According to appellant, the magistrate adopted a line of reasoning that required him to disprove appellee's assertion that he was voluntarily underemployed, or that he had to disprove a negative. Appellant considers this to be "addled reasoning."
In calculating an amount of child support, the trial court is required to take into account the "potential income" of a parent who is unemployed or underemployed. See R.C.3113.215(A)(1)(b) and (B)(1). R.C. 3113.215(A)(5) defines potential income as follows:
 " 'Potential income' means both of the following for a parent that the court * * * determines is voluntarily unemployed or voluntarily underemployed:
 "(a) Imputed income that the court * * * determines the parent would have earned if fully employed as determined from the parent's employment potential and probable earnings based on the parent's recent work history, the parent's occupational qualifications, and the prevailing job opportunities and salary levels in the community in which the parent resides * * *."
The Supreme Court of Ohio had occasion to address the meaning of R.C. 3113.215(A)(5) in the case of Rock v. Cabral (1993),67 Ohio St.3d 108. The Supreme Court held:
 "Whether a parent is 'voluntarily underemployed' within the meaning of R.C. 3113.215(A)(5), and the amount of 'potential income' to be imputed to a child support obligor, are matters to be determined by the trial court based upon the facts and circumstances of each case. The determination will not be disturbed on appeal absent an abuse of discretion." (Emphasis added.) Id. at syllabus.
Thus, as an initial proposition, the trial court must decide whether a parent is voluntarily unemployed or underemployed. Once that initial determination has been made, the amount of imputed income should be determined in light of the factors enumerated in R.C. 3113.215(A)(5)(a).
In this context, we note that there is very little case law available, if any, as to which party has the burden of production or burden of proof when there is a claim that one parent is voluntarily unemployed/underemployed and that a certain amount of income should be imputed to that parent. Unfortunately, the Rock decision does not offer particular guidance on this point.
Thus, we believe that the parent who claims that his or her former spouse is underemployed or voluntarily unemployed has the burden of proof on that issue. If evidence of such fact can be established, the burden then shifts to the unemployed or underemployed spouse to show that he is working and/or earning up to his potential. This is particularly true when the party claiming the disability has confidential or privileged information relative to this claim and then, during the discovery process, denies access to the information to the party asserting the claim.
This is what occurred in the instant case. Here appellee's counsel attempted to obtain pertinent medical information relating to the extent of appellant's disability and was unable to do so because appellant withheld permission for appellee to view the same.[4] Thus, under the facts of this case, it would seem entirely reasonable, and not a bit "addled," that if appellant was claiming that his income was limited by his disability, then he would have a burden to provide evidence and documentation concerning the extent of his disability once appellee established a prima facie case of voluntary unemployment.
In the case at bar, the magistrate noted that "there was no evidence, medical or otherwise, submitted by [appellant] that he cannot work though he is on disability from the fire department." The magistrate thereafter found appellant to be voluntarily underemployed. Considering appellant's own testimony that he was able to work part-time as an investigator for a consulting firm, drive, play in a bag-pipe band, cut grass and perform other physical activities, we cannot say that the trial court abused its discretion in adopting the magistrate's finding that appellant was voluntarily underemployed.
Again, given appellant's failure to provide pertinent information as to the extent of the disability, he cannot now persuasively complain that a lack of evidence existed to support the magistrate's finding. This is particularly true in light of the fact that his own testimony raised the inference that he was not totally physically disabled and established that he engaged in some part-time employment.
As to the amount of income imputed to appellant, it is apparent that appellant believes the magistrate failed to take into consideration the prevailing job opportunities and salary levels in the community in which appellant resides as required by R.C. 3113.215(A)(5)(a). Here, we agree. There was no testimony about job opportunities or salary levels with other companies in the community in which appellant resides. Accordingly, appellant's second assignment of error is well-taken with respect to the amount of imputed income. The matter must be remanded for further proceedings to determine the amount of income to impute to appellant in accordance with the statutory provisions.
In his third assignment of error, appellant argues that the trial court erred by ordering him to pay part of appellee's attorney fees in the amount of $2,250 without considering the factors of need and ability to pay as required under R.C.3105.18(H). Appellee's entire attorney fees were approximately $10,000.
It is well-established that absent an abuse of discretion, a trial court's decision to award attorney fees in divorce proceedings will not be overturned on appeal. Oatey v. Oatey
(1992), 83 Ohio App.3d 251, 263; Cohen v. Cohen (1983), 8 Ohio App.3d 109,111; Swanson v. Swanson (1976), 48 Ohio App.2d 85,89-90.
Although the trial court in the case at bar did not identify the authority upon which it awarded the attorney fees, it is apparent that the court relied upon R.C. 3105.18(H) in awarding the fees. Indeed, appellee indicated to the trial court that it was requesting attorney fees on this basis. It is also apparent that the requisite statutory provisions contained therein were considered.
In Hansen v. Hansen (Dec. 11, 1992), Lake App. No. 92-L-052, unreported, at 4-5, this court held that as long as the appellate court is able to determine the rationale underlying the award of fees, and the record supports the same, no abuse of discretion will be found.
R.C. 3105.18(H) reads, in pertinent part:
 "(H) In divorce or legal separation proceedings, the court may award reasonable attorney's fees to either party at any stage of the proceedings, * * * if it determines that the other party has the ability to pay the attorney's fees that the court awards. When the court determines whether to award reasonable attorney's fees to any party pursuant to this division, it shall determine whether either party will be prevented from fully litigating that party's rights and adequately protecting that party's interests if it does not award reasonable attorney's fees." (Emphasis added.)
Ohio courts have upheld attorney fees as "reasonable" under this statute when one party intentionally caused the other party to incur unnecessary, substantial fees during the litigation or when one party has otherwise been responsible for much of the litigation. Stewart, supra, at 20-23; Berry v. VanGulijk (Sept. 29, 1994), Logan App. Nos. 8-93-31 and 8-94-2, unreported, 1994 Ohio App. LEXIS 4458, at * 4-6. See, alsoHansen, supra, at 4-5; Farley v. Farley (1994), 97 Ohio App.3d 351,357 ("[t]he court must look at various tactics used during the entire case to determine whether those tactics are used to delay the proceedings and increase attorney fees regardless of who pays the fees. The court must also examine the conduct of the parties to determine at what point the quest for justice ceases, and the use of the legal system as a tool for punishment, harassment, coercion, and intimidation of the other party begins.").
In the case at bar, the trial court stated: "[a]s the Court views the situation, the only conceivable error is that the magistrate used the term 'estimates' that a minimum of fifteen hours has been expended on superfluous matters resulting from the conduct of the defendant. It is the opinion of the Court, however, that the record substantiates that at least fifteen hours have been expended on such matters, and that the recommendation of $2,250.00 is proper."
In this passage, the court was referring to the magistrate's finding that appellant "should be responsible for a contribution of fees caused solely by his conduct, which includes deliberately making service difficult and therefore more expensive, necessity of [appellee's] attorney to obtain a temporary restraining order (though later mutually withdrawn;) threats and harassments by [appellant] causing unnecessary motions and conferences by [appellee's] attorneys; and delay or denial in providing discovery."
It was conceded that appellant told appellee he wanted to make her spend a lot of money on the case and otherwise run her into the ground financially. Appellee testified that appellant made this comment during the settlement process when she apparently accused him of sending outrageous proposals rather than attempting to negotiate in good faith.[5] It was also conceded that discovery was not provided as requested. Appellant's counsel first blamed this on an incompetent secretary whom he allegedly later fired. However, at the hearing on appellant's objections, appellant's counsel argued that discovery was not provided because there was no court order compelling discovery.
Appellant also conceded to making various threats and acting abusively towards appellee. Although there was some dispute as to whether appellant attempted to avoid service, that issue remained for the trier of fact to determine.
Moreover, appellee's attorneys testified to their fee arrangement with appellee and the various difficulties they faced in preparing what should have been a relatively easy case. Problems with service and discovery and conferences over various threats which appellant made to appellee were cited. Appellant did not, in fact, dispute that their fee of $150 per hour was reasonable for the attorneys' level of experience.
Finally, although the better practice would have been for the magistrate or trial court to make an express finding that appellant had the ability to pay the fees, the record supports the conclusion that he could bear such an amount. Cf.Deegan v. Deegan (Jan. 29, 1998), Cuyahoga App. No. 72246, unreported, 1998 Ohio App. LEXIS 270. In addition, appellant's comments concerning his interest in running appellee into the ground financially support the conclusion that he was attempting to prevent appellee from fully litigating her rights and adequately protecting her interests. Cf. Berry, supra.
Appellant's third assignment of error is without merit.
In the fourth and final assignment of error, appellant argues that the trial court abused its discretion when it denied appellant's request for shared parenting without considering the statutory mandates of R.C. 3109.04(F)(2). In particular, appellant argues that the magistrate and then the trial court focused on arguments between the parties which had nothing to do with the child, thereby improperly denying shared parenting on that basis.
This argument is without merit. Initially, we note that the magistrate indicated that she considered all factors in arriving at her decision that a shared parenting plan would not be in the best interest of the child. Presumably, the magistrate was referring to all factors referenced in R.C.3109.04(F)(2). The trial court adopted this finding, noting:
 "Upon review of the evidence presented, both to the Magistrate and to this Court, it is abundantly clear that these parties could never communicate sufficiently for a shared parenting order to work. [Appellant's] uncontrolled temper, his use of vile and obscene language, and his threats, both veiled and overt, do not lend themselves to a civil relationship with [appellee]. This Court is of the opinion that to place this child in a shared parenting situation between these two parents so filled with hatred would be devastating to the child."
It is, of course, axiomatic that a trial court has broad discretion to determine the allocation of parental rights and responsibilities for children. Bechtol v. Bechtol (1990),49 Ohio St.3d 21, 23, citing Trickey v. Trickey (1952), 158 Ohio St. 9,13.
In this regard, R.C. 3109.04(F)(2) governs a trial court's determination of whether a shared parenting plan is in the best interest of the child. Among other factors, this section requires a trial court to consider the ability of the parents to cooperate and make decisions jointly, with respect to the children. The court is also required to consider any history of, or potential for child abuse, spouse abuse, other domestic violence, or parental kidnaping by either parent. R.C.3109.04(F)(2)(a) and (c).
It is clear that the trial court did not abuse its discretion in adopting the magistrates's recommendation that shared parenting would not be in the best interest of the child in this situation. Indeed, the trial court found that it would be devastating for the child to be placed in the middle of such violent and hostile interaction between the parents. Moreover, there was no dispute that appellant exhibited threatening, hostile and vile behavior towards appellee. Pursuant to R.C.3109.04(F)(2)(c), the trial court was required to consider this spousal abuse. Appellant's contention in his brief that the incidents did not involve the parties' communications with regard to the child or did not otherwise involve the child is not well-taken.
Indeed, numerous examples from the record come to mind. When the child was only eight months old, appellant held a gun to appellee's head for ten minutes while the entire family was in the child's nursery. On another occasion, in claimed retaliation for closing a door on his foot, appellant charged appellee and shoved her in a snowdrift when appellee was delivering the child to appellant for visitation. Appellee filed a police report in relation to this incident. Appellant publicly used vile and degrading language towards appellee in order to deliberately embarrass her while the two were attending the child's dance recital at her school. Appellant also conceded that he deliberately took the child as a tax exemption on his tax return, despite the fact that he had very little taxable income, thereafter making it more difficult for appellee to try and claim the child as a tax exemption. Considering the above, and the fact that the magistrate indicated that all factors were contemplated, it is clear that appellant's fourth assignment of error is without merit.
In light of the foregoing analysis, appellant's first and second assignments of error have merit. The third and fourth assignments of error are without merit. The case is hereby affirmed in part, reversed in part and remanded for further proceedings consistent with this opinion.
 ------------------------ JUDGE WILLIAM M. O'NEILL
CHRISTLEY, P.J., dissents with Dissenting Opinion,
NADER, J., concurs.
[1] The domestic relations court transferred this matter to Judge Weaver of the juvenile court because of a potential conflict of interest.
[2] The magistrate did not find that appellant had submitted a worksheet. Although appellant contends that he did submit a worksheet, the record on appeal does not support this contention.
[3] But, see, Stewart v. Stewart (Apr. 17, 1998), Montgomery App. Nos. 16649 and 16769, unreported, 1998 Ohio App. LEXIS 1590, at * 35-38 (where the Second Appellate District rejected the holding in McCoy, indicating that nothing in Marker or the statute precludes a magistrate or trial court from adopting a worksheet compiled by either of the parties, even if the party's worksheet is not signed or notarized).
[4] The record reveals that prior to trial, appellee asked appellant to sign a release form allowing appellee access to appellant's police and fire pension and disability records in order to determine the extent of appellant's disability. Appellee's counsel prepared the required form and sent it to appellant's counsel for appellant to sign. Appellant never signed the form. Although appellee thereafter attempted to subpoena the records, both parties conceded below that such subpoenas are not honored. Then, at trial, appellant attempted to introduce evidence concerning the same without any prior notice to appellee. The magistrate excluded the evidence on the ground that appellant failed to comply with a pretrial discovery order of the court. Appellant has not challenged the decision of the magistrate in this context on appeal, therefore, we will not address the same.
[5] On March 4, 1994, the trial court entered a pre-trial order which stated: "Counsel and the parties are directed to meet at a mutually convenient time and place before the pre-trial. Plaintiff's counsel is directed to call all defendants and/or their counsel for this purpose. At this conference the litigants shall attempt to resolve all issues, as well as settlement. Demands for settlement shall be reasonablycalculated for an equitable solution." (Emphasis added.) We further note that appellant did not object to appellee's testimony of statements made during settlement discussions.
 DISSENTING OPINION