OPINION
Plaintiff-appellant Cheryl Tarr appeals from the order of the Jefferson County Common Pleas Court which awarded child support to her after deviating downward from the guidelines and which awarded the tax dependency exemption of one of the three children to defendant-appellee Thomas Walter. For the following reasons, the judgment of the trial court is affirmed in part, reversed in part and this case is remanded for further proceedings.
 STATEMENT OF FACTS
Cheryl and Thomas Walter were divorced in 1992. Thomas was granted custody of Michael, the parties' oldest child. Cheryl was granted custody of Sara and Adam. Both parties remarried. As for child support, Thomas was originally ordered to pay $289 per month total. Soon thereafter, this was increased to $320 per month. In 1996, this was decreased to $135 per month.
On February 22, 2001, Cheryl filed a motion for change of custody regarding Michael. Thomas consented to this change of custody. The Child Support Enforcement Agency (CSEA) was instructed to conduct an investigation and provide the court with worksheets and recommendations on the amount of statutory child support. CSEA submitted its findings and two worksheets on March 19, 2001. CSEA found Thomas's income to be $41,990 and Cheryl's income to be $19,000. Using these figures, one worksheet concluded that child support for three children would be $736 per month (or $245 per child per month). An alternative worksheet calculated that child support for only two children would be $626 per month (or $313 per child per month). At the time, Michael was preparing to graduate and was four months from emancipation, Sara was sixteen, and Adam was thirteen.
On March 20, 2001, the court sustained the motion for change of custody with the consent of Thomas. The court then held a hearing on March 26, 2001, where Thomas asked the court to deviate from the worksheet calculation and eliminate his obligation to pay support for Michael based upon Michael's earnings. Cheryl responded that although Michael pays for his own hobbies of trap and bow shooting, gas money, and most of his car insurance, she still incurs considerable expense in providing him with the more essential things in life, such as food, shelter, and clothing.
At the hearing, Thomas also asked that he receive the tax dependency exemption for all three children if he had to pay support for Michael and for the two younger children if he did not have to pay support for Michael. Cheryl only contested his request for the exemption for the two younger children.
In its March 29, 2001 judgment entry, the court granted Thomas's request for deviation regarding Michael by holding that Thomas need not pay any child support to Cheryl for this child mainly based upon Michael's earnings. The court then sua sponte deviated from CSEA's calculations for the younger children and cut their calculated amount in half. The court based this decision mainly on the fact that Cheryl's husband makes $64,000 a year while Thomas has a six-year-old and a wife that does not work. The court focused on household incomes and added Michael's estimated future earnings into the household income of Cheryl and her husband.
Cheryl filed timely notice of appeal. The case was recently assigned to the current writing judge on March 27, 2002.
 ASSIGNMENT OF ERROR NUMBER ONE
Cheryl's first assignment of error contends:
 "THE TRIAL COURT ERRED IN GRANTING APPELLEE A DEVIATION FROM THE PRESUMPTIVE CHILD SUPPORT OBLIGATION WHEN THE COURT:
 "(A) COMPLETELY TERMINATED APPELLEE'S SUPPORT OBLIGATION FOR ONE OF THREE MINOR CHILDREN WHO EARNED WAGES, AND
 "(B) CUT BY ONE-HALF THE PRESUMPTIVE CHILD SUPPORT OBLIGATION FOR THE REMAINING TWO CHILDREN."
As long as there are children who have parents residing in separately maintained households, there will be discussion and controversy relative to the proper and appropriate level of financial support due and owing said children. The General Assembly enacted legislation in response to this problem which sets forth guidelines for all courts in this state which are called upon to establish a child support order. When calculating child support, a court is to use the worksheet set forth in R.C. 3119.022 combined with the basic schedule set forth in R.C. 3119.021. The initial calculation produces a rebuttable presumption of the proper amount of child support. After figuring this amount, the court may consider factors that lean toward deviation from this amount. In doing so, the court must first set forth the presumed amount as set forth in Ohio's Child Support Guidelines. Then, the court must find and state that this amount would be unjust or inappropriate and that this amount would not be in the child's best interests. In addition, the court must set forth findings of fact supporting this determination and the basis for the deviation. R.C. 3119.22 and 3119.23. The worksheet contains a line, presently line 24.a., on which the court must specifically enter the amount of the deviation. The worksheet then has a line where the court must input the final figure of child support, which is the presumed amount minus or plus the deviation amount.
Cheryl complains that the court failed to explicitly articulate the rationale behind its deviation. She cites Marker v. Grimm (1992),65 Ohio St.3d 139, 141-142, which called for strict compliance in completing a worksheet. Cheryl also contends that the court focused too much on certain evidence while ignoring other evidence. Although the court set forth many explanations for its deviations, we find multiple problems with the support award in this case.
Firstly, we note that the trial court failed to prepare a worksheet. We realize that various courts have found harmless error where a worksheet has been filed by someone other than the court, is in the record, and was clearly relied on or adopted by the court. See, e.g., State ex rel.Scioto Cty. Child Support Enf. Agency v. Gardner (1996),113 Ohio App.3d 46; McCoy v. McCoy (1995), 105 Ohio App.3d 651. Nonetheless, there are distinctions here that prohibit the application of these cases for our purposes.
The existing worksheets were prepared and filed by CSEA. The court's judgment entry uses the presumed amount of child support as calculated by CSEA as its starting point. However, the trial court's judgment entry found that Thomas's income was $48,400. As previously stated, CSEA's worksheet only listed it as $41,990. Thus, the trial court relied on CSEA's end result while simultaneously disagreeing with their beginning numbers. This is erroneous.
Moreover, CSEA is not permitted to calculate deviations, and thus, it did not. See, e.g., R.C. 3119.61. Accordingly, because the line on the worksheet requiring the amount of downward deviation is blank, we cannot say that the trial court's use of CSEA's worksheet is harmless as may be in a case of no deviation. See Rock v. Cabral (1993), 67 Ohio St.3d 109,110; Marker, 65 Ohio St.3d at 141-142 (calling for strict compliance).
Regardless, even if the court was permitted to enter its final figures on a sheet separate from the worksheet, there are problems with the end results in this case. Based on the trial court's findings, it appears that some deviation of the presumed amount for Michael is acceptable. However, both the court's lack of specific monetary assignments and the enormity of the deviation are troubling here.
The trial court awarded $0 in child support for the seventeen-year old child based on the court's finding that he makes $12,168 per year. The court figured this annual income by multiplying thirty-six hours per week by $6.50 per hour. We first note that the court's annual figure assumes that the child will not have any weeks off. Even when courts compute an obligor-adult's annual income by using an hourly wage, they allow the adult at least a two-week vacation.
More importantly, the court turned testimony about a job which a seventeen-year-old beneficiary had for a mere four weeks into an annual income. The undisputed testimony demonstrated that Michael made approximately $3,800 in 2000. Michael had just recently begun his current job. In fact, he received his first paycheck on the date Cheryl filed her motion for a custody change. It was undisputed that Michael makes $6.50 per hour and has fluctuating hours, rising as high as thirty-six hours a week. As can be seen from Michael's pay stubs, he has not yet grossed the $234 weekly wage set for him by the court. In his four weeks of work, his weekly gross was as follows: $165, $188, $221, and $214. Moreover, at the time of the judgment, Michael was two months from graduation and less than three months from his eighteenth birthday, which coincides with emancipation. Hence, it really is not necessary to turn his job of four weeks into an annual income. This problem carries into issues regarding Cheryl's household income, to which the court added Michael's estimated earnings and which will be addressed infra.
Furthermore, the trial court also supported the deviation decision concerning Michael by opining that Cheryl enjoys certain benefits from remarriage. The court mentioned some benefits of her remarriage, such as access to hospitalization for herself and the children. Yet, the trial court did not assign values to the benefits. Additionally, the testimony established that Thomas provided primary insurance, that Cheryl's employer (the county) provided free secondary insurance, and that Cheryl's husband's insurance was merely a third carrier. It is difficult to surmise how this is a benefit of remarriage that would qualify as a deviation factor.
Thomas states that the court also considered disparity in household incomes as a factor in deviation. Although the court mentioned that Cheryl's husband makes more than Thomas when eliminating Michael's support, the arrangement of the judgment entry seems to show that the court did not actually begin its salary calculation for household income purposes until it decided to deviate on the younger two children. Regardless, we shall set forth our opinion on the household income issue infra.
Although the court has discretion to deviate from the presumptive amount of child support when there is an income-producing child under R.C. 3119.23(F), the court deviated too extremely under the circumstances in this case by deviating from $245 per month for this child to $0. Cheryl testified that Michael uses his income for his hobby of trap and bow shooting, gas money, and $40 per month in car insurance. Cheryl then stated that she contributes $20 per month to Michael's car insurance. She testified that her grocery and toiletry bill has dramatically increased because a seventeen-year-old boy has been added to the list of occupants. She stated that some utility bills have also increased, noting that Michael takes two showers per day.
It must be remembered that the presumption is that child support should be awarded in the amount calculated through the schedules. Thus, it is not Cheryl's burden to support the presumption. Rather, it is Thomas's burden to rebut the presumption. On this note, even Thomas admitted that his food bill decreased by $25-30 per month since Michael left. Furthermore, existence of the deviation factors calls for consideration of an amount appropriate for deviation; it does not call for a per se credit.
For all of the foregoing reasons, we believe that the deviation bringing child support from $245 per month to $0 was too extreme and was based upon erroneous assumptions. We thus remand for reconsideration of the child support for Michael for the months from the filing of the motion until his emancipation.
As for the younger children, the trial court found that appellant should not receive the presumed amount for these two children because of the disparity in household incomes. The court then cut the presumed amount in half.
First, we note that the court started with the presumed amount for only two children, which is $313 per child, rather than the presumed amount for three children, which is $245 per child. Even when a court deviates downward due to an income-producing child, that child is not erased. (Note that the court did not find Michael to be self-sufficient and emancipate him.) The statute requires the court to start with the presumed amount as calculated purely from the schedules; it is only then that the deviation can occur. Thus, a specific deviation amount should have been entered per month for Michael, but the worksheet concerning three children was still the proper choice. As such, this problem with the starting point has corrupted the remainder of the calculation concerning Sara and Adam.
Regardless, we find other problems in the deviation from the presumed amount of child support. Most glaring is the fact that Thomas never asked for any deviation except for an elimination of child support for Michael based upon Michael's income. Any testimony elicited from Cheryl on her husband's income only incidentally and indirectly disclosed his income because, in trying to establish Cheryl's income from last year, Thomas submitted a joint income tax return and asked Cheryl what amount of the total represented her income.
Pursuant to R.C. 3119.22, the court cannot deviate unless the presumed amount is unjust or inappropriate and not in the children's best interests. Where the obligor himself does not argue that the amount is unjust or inappropriate and where he specifically concedes the correctness of CSEA's figure (with the exception of Michael), we cannot see how a court can find unjustness or inappropriateness. Moreover, as aforementioned, because the amount from the schedule is a presumption, Thomas must rebut that presumption. In so saying, we do not understand how Thomas can be found to have met that burden of rebuttal when he specifically failed to request such a remedy. As such, we find it unreasonable to deviate from the presumptive amount of child support for Sara and Adam.
On remand, it appears that the court will need to complete a worksheet for three children based upon prior found facts, make the required findings about a deviation concerning Michael, and enter the monthly deviation amount and final figure. The court will then complete a worksheet for two children from Michael's emancipation date. Although Thomas will have an arrearage after doing so, this should not be a grave incident in his financial life as he was aware of (and okay with) his obligation to pay the presumptive amount for Sara and Adam coming into the hearing in March 2001.
Even without the above findings regarding the sua sponte deviation, the use of a two-child worksheet, and the addition of Michael's assumed annual income to the household income, we still have concerns about the court's application of the deviation statute. One deviation factor, contained in R.C. 3119.23(H), is based on benefits of remarriage or shared living expenses. Another deviation factor, contained in R.C.3119.23(G), allows consideration of "[d]isparity in income between parties or households."
We have trouble reconciling the quoted language of this statute concerning household income with the language of R.C. 3119.05(E), which explicitly precludes consideration of a new spouse's income when computing income in the worksheet. It seems to us that a court should not be able to do indirectly, through deviation, what it cannot do directly. We do not believe that the legislature intended the following scenarios that would result from the trial court's interpretation in this case: each time the obligee's spouse earns a major raise, the obligee's child support entitlement could be decreased; or conversely, each time an obligor's spouse earns a major raise, the obligor's child support obligation could be increased. This interpretation would only lead to other problems, such as imputing income to voluntarily unemployed spouses of the parties and having to go through the process of subtracting union dues or self-employed business expenses from spouses' incomes.
Even if the legislature did intend for courts to probe into the actual income of a new spouse under R.C. 3119.23(G), the process would be toconsider disparity in household income, not to attempt to equalize household incomes. As aforementioned, the existence of a deviation factor does not mean that a full credit is automatically due. The underlying rationale and premise behind the worksheet and schedule should be remembered; that is, child support is aimed at keeping the child in the position he would occupy if the marriage had not terminated.
For all of the foregoing reasons, Cheryl's first assignment of error is sustained. There shall be no deviation from the presumed amount of child support for Sara and Adam as there was no allegation and was in fact a concession that the presumed amounts for these children were appropriate and just. This case is remanded for preparation of a worksheet to clarify the obligor's income and the resulting child support presumptions. Thereafter, the court shall specify the amount of downward deviation concerning Michael with valid and reasonable assignments of value for each reason supporting a decrease from the presumed amount of child support.
 ASSIGNMENT OF ERROR NUMBER TWO
Appellant's second assignment of error provides:
 "THE TRIAL COURT ERRED WHEN IT DIVIDED THE INCOME TAX DEPENDENCY EXEMPTION BETWEEN APPELLANT AND APPELLEE FOR THE TWO YOUNGEST MINOR CHILDREN, WITHOUT REFERENCE TO THE FACTORS DELINEATED IN § 3119.18, OHIO REVISED CODE, AND WITHOUT ANY BASIS IN FACT."
As aforementioned, the court awarded the dependency exemptions for Michael and Adam to Cheryl and awarded the exemption for Sara to Thomas. Cheryl argues that the exemption for Sara should be hers as she believes that testimony established that she will receive the largest net tax savings. She also points out that Sara spends the majority of time at her house.
When a court issues or reviews a child support order, the court shall designate which parent can claim the children as dependents for federal income tax purposes. R.C. 3119.82. Where the parties dispute which parent should receive the exemption, the court may only permit the nonresidential parent to claim the children as dependents if the court determines that this would further the best interests of the children. R.C. 3119.82 (also requiring that the nonresidential parent owe no substantial arrearage for the year of the deduction). In determining best interests, this statute instructs the court to consider the following: any net tax savings; the relative financial circumstances and needs of the parents and children; the amount of time the children spend with each parent; any eligibility for the federal earned income tax credit or other state or federal tax credit; and any other relevant factor concerning best interests of the children.
This statute is applicable to the present case as it became effective March 22, 2001, four days prior to the hearing. The statute contains some of the language contained in former R.C. 3113.21(C)(1)(e) (repealed during the enactment of R.C. 3119.82). The new statute also codifies part of a Supreme Court case, which held in main part that a nonresidential parent may receive the exemption when it "would produce a net tax savings for the parents, thereby furthering the best interest of the child."Singer v. Dickinson (1992), 63 Ohio St.3d 408, 415-416 (also opining that a net tax savings would only occur if the nonresidential parent was in a higher tax bracket (although, the earned income credit would negate this theory, as would the elimination of the dependency deduction for extremely high income earners). However, as can be seen from the plain language of R.C. 3119.82, new considerations have been added, increasing the court's discretion in determining best interests to a level beyond that of merely net tax savings. Thus, the court was permitted to consider the parties' relative financial situations when it deemed that allowing Thomas to claim sixteen-year-old Sara (and allowing Cheryl to claim almost-emancipated Michael and thirteen-year-old Adam) would be equitable.
Moreover, Cheryl's propositions set forth in support of her argument that she will realize the largest net tax savings are contradictory and erroneous. CSEA found and Thomas agreed that his income for the year 2000 was $41,990. (Tr. 24). He testified that, in the 15% tax bracket, he would realize a tax savings of $420 per child through the dependency exemption. (Tr. 30). Cheryl and her husband both set the value of the exemption to them for last year at $1,000 per child. However, three things must be realized.
First of all, the court found that Thomas's income was $48,400, which places him in the next tax bracket of 28% for the year 2000. Moreover, Cheryl's own cross-examination of Thomas, using his last pay stub of the year, showed that he made $46,106 in 2000, which is also in the 28% tax bracket.
Secondly, Cheryl made $50,000 in the year 2000. This $50,000 in income was the result of a $33,000 salary from the former prosecutor's office and a $17,000 bonus at the end of the year which coincided with the end the former prosecutor's term. The court specifically described this payment as an "aberration." Cheryl no longer works in this office as a result of the new administration. Currently, she earns only $19,000. Hence, even if she and her husband were in the 31% tax bracket last year due to this large and unusual bonus and her higher salary, it is highly improbable that they will be in this bracket for the year 2001, which is the most relevant year for our purposes. Rather, after adding her husband's income and her income, it appears that they will fall near the middle of the new 27.5% tax bracket.
Thirdly, Cheryl surmises Thomas's current earnings for the first five weeks of 2001 lean toward a suggestion that he will make $61,000 in 2001, which would also fall in the new 27.5% bracket. Under all of her arguments, it is most reasonable to assume that she and Thomas will be in the same tax bracket in the year 2001. As such, her net tax savings argument fails.
We note that under prior court order, Thomas was permitted to claim Michael for the year 2000. However, he did not do so due to the fact that Cheryl's husband filed Michael's return for him, and thus, in Thomas's opinion, he ruined the availability of the exemption. We also note our recent case of In the Matter of Criner (Aug. 27, 2001), 7th Dist. No. 99BA57, where we stated that the court must consider all pertinent evidence in determining which parent should be allocated the exemption, and where we held that decisions on allocation of the exemption are within the trial court's discretion.
Under the preceding analysis and the circumstances of this case, we refuse to substitute our judgment for that of the trial court on this issue. Trial courts were recently given wide discretion in allocating the dependency exemptions, and we do not believe that the court abused its discretion on this matter. Therefore, this assignment of error is overruled.
For the foregoing reasons, the judgment of the trial court is hereby affirmed in part, reversed in part and this case is remanded for further proceedings according to law and consistent with this court's opinion.
Donofrio, J., concurs.
DeGenaro, J., concurs in judgment only.