[Cite as *Derrig-Heacox v. Heacox*, 2017-Ohio-5743.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 104557**

---

**JOAN E. DERRIG-HEACOX**

PLAINTIFF-APPELLEE

vs.

**MARK J. HEACOX**

DEFENDANT-APPELLANT

---

**JUDGMENT:**
AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Domestic Relations Division
Case No. DR-10-332805

**BEFORE:** Jones, J., Boyle, P.J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:** July 6, 2017

**ATTORNEY FOR APPELLANT**

J. Michael Drain
147 Bell Street, Suite 202
Chagrin Falls, Ohio 44022


**ATTORNEYS FOR APPELLEE**

Joseph G. Stafford
Nicole A. Cruz
55 Erieview Plaza, 5th Floor
Cleveland, Ohio 44115

LARRY A. JONES, SR., J.:

{¶1} Defendant-appellant, Mark Heacox, appeals the trial court's decision determining that the $160,000 payment from his former employer is subject to division under the terms and conditions of his divorce decree with plaintiff-appellee, Joan Derrig-Heacox. For the reasons that follow, we affirm.

## I. Procedural History and Facts

{¶2} Mark and Joan's marriage was dissolved in October 2010. At that time, the parties' separation agreement was ordered into effect as part of their divorce decree. As is pertinent to this appeal, the agreement contained the following provision:

> Joan shall also receive Fifty Percent (50%) of Mark's bonuses, stocks or emergence bankruptcy bonuses through his employer Delphi over the next 60 months. These payments will be paid as income to Joan and be a tax deduction to Mark.

{¶3} Litigation between the parties continued after their divorce. At a May 21, 2014 hearing, the parties came to an agreement with regard to pending motions and executed an agreed judgment entry ("May 2014 AJE"). As part of the May 2014 AJE, Mark agreed to pay Joan one-half of a $33,500 bonus payment he had received from his employer, Delphi Automotive, and any additional amounts subject to division as set forth in their divorce decree. He also agreed under a Qualified Domestic Relations Order ("QDRO") to pay Joan a cash payment of $200,000 and an additional $240,000 from his Delphi Corporation Salaried Retirement Program.

{¶4} Days after executing the May 2014 AJE, Joan filed a motion to show cause, alleging that on May 4, 2014, and unbeknownst to her, Mark had entered into a Separation and Release of Claims Agreement with Delphi terminating his employment. Under the terms of Mark's separation agreement with Delphi, he was to receive a lump sum payment of $160,000, which Joan claimed was attributable to bonuses he received or should have received while working for

the company and, therefore, subject to division under the terms of their divorce decree. She filed subsequent motions to show cause alleging that Mark failed to make the $200,000 and $240,000 payments that were due to her under the May 2014 AJE.

{¶5} The parties were unable to resolve the issue and the matter proceeded to a full hearing.

{¶6} Mark testified that he had worked for Delphi Automotive from 1968 until April 15, 2014; he learned in March 2014 that he was going to be terminated. His most current position with the company was the Director of Manufacturing for Delphi Connection Systems of the Americas. According to Mark, he was offered a $160,000 lump sum payment as part of his separation agreement that was for releases of claims for age discrimination and breach of contract for monies owed to him under Delphi's bonus program, not, as Joan alleged, a bonus.

{¶7} Mark testified that he entered into the agreement with Delphi on May 4, 2014. He admitted that he knew that when he was negotiating the terms of his separation agreement with Delphi that if the agreement mentioned anything about bonuses, that money would be subject to division under his divorce decree; therefore, he did not want the agreement to mention bonuses. Thus, he told Delphi that the separation agreement could not "say anything about bonuses or potential bonuses."

{¶8} Mark admitted that he did not tell anyone involved in his domestic relations case, including his own attorney, about his separation agreement with Delphi. Mark testified that he agreed at the May 21, 2014 hearing that he would be obligated to pay Joan one-half of any bonuses and he also knew on that date that he would be receiving an additional $160,000 lump sum payment as part of his separation with Delphi. He further admitted that he closed his Fidelity retirement account and rolled the monies over to another account on June 4, 2014, which

was two weeks after agreeing to transfer $240,000 from the Fidelity account to Joan. It was not until November 2014 that Mark finally transferred $240,000 from his new retirement account to Joan by QDRO.

{¶9} According to the Separation and Release of Claims Agreement with Delphi Automotive, Mark separated from his employment with Delphi as of April 15, 2014. As part of the agreement Delphi was to provide him with: (1) $195,854 less applicable withholdings in 24 semi-monthly installments; (2) six months outplacement assistance; (3) benefits under his Supplemental Executive Retirement Program ("SERP"); and (4) an additional payment of $160,000 less applicable withholdings.

{¶10} Mark identified an email dated April 10, 2014, that he sent to Delphi proposing changes to the separation agreement. Mark proposed the company pay him $165,000: $65,000 as a "DCS Cash Award" (Delphi's Connections Cash Awards Program) and $100,000 for "bonus shortages" for years 2012, 2013, and 2014. But, he maintained, he had not negotiated a cash bonus; instead he was negotiating waiver of his age discrimination and breach of contract claims.

{¶11} Joan testified that she eventually received the $200,000 cash payment and the $240,000 payment via a QDRO but had yet to receive any of the $160,000 payment.

{¶12} After the hearing and post-trial briefs, the magistrate issued a lengthy decision in which the magistrate granted Joan's motion to show cause and motion for attorney fees. The magistrate determined that Joan was entitled to one-half of the $160,000 because it was a bonus and Mark's failure to pay her was a violation of the parties' divorce decree. The magistrate further found that Mark was guilty of contempt of court for improperly closing the Fidelity retirement account after executing the May 2014 AJE but before the funds were divided by a QDRO. The magistrate also awarded attorney fees to Joan in the amount of $8,705.47.

{¶13} The parties filed timely objections to the magistrate's decision. The trial court overruled those objections and adopted the magistrate's decision. Mark filed a timely notice of appeal. Joan filed an untimely notice of cross-appeal and this court sua sponte dismissed her cross-appeal.

## II. Assignment of Error

{¶14} Mark lists his assignment of error as follows:

The trial court abused its discretion in rewriting the contract between appellant and his former employer in a way that misconstrues the plain meaning of the contract.

The trial court abused its discretion in finding appellant in contempt where appellant did not receive any monies pursuant to the agreement of May 5, 2014 for which he should be held in contempt.

The trial court abused its discretion in awarding attorney's fees to appellee.

## III. Law and Analysis

{¶15} App.R. 16(A)(7) requires "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies. * * * ." Mark's appellate brief did not contain numbered assignments of error and he raises only the issue of his separation agreement in the body of his brief. He does not mention his contempt finding or challenge the payment of attorney fees in the body of his brief, let alone argue those issues; therefore, we will not consider those issues.

{¶16} Thus, the sole issue on appeal is whether the trial court correctly determined that Joan was entitled to one-half of the $160,000 payment Delphi made to Mark as part of his separation agreement. Mark argues that the lump sum payment should not have been construed as a "bonus," because it was in settlement of his claims against his former employer.

{¶17} Our standard of review is whether the trial court abused its discretion in adopting the magistrate's decision. *Klayman v. Luck*, 8th Dist. Cuyahoga Nos. 97074 and 97075, 2012-Ohio-3354, ¶ 11. When reviewing the propriety of a trial court's determination in a domestic relations case, an appellate court generally applies an abuse of discretion standard. *Luck* at *id.,* citing *Gray v. Gray*, 8th Dist. Cuyahoga No. 95532, 2011-Ohio-4091, ¶ 7. An abuse of discretion implies that the court's attitude was unreasonable, arbitrary, or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶18} In the magistrate's decision, the magistrate defined severance payments as "payment by an employer to an employee beyond his [or her] wages on termination of his [or her] employment." *McCoy v. McCoy*, 105 Ohio App.3d 651, 656, 664 N.E.2d 1012 (4th Dist.1995). The magistrate, citing *Avakian v. Avakian*, 11th Dist. Portage No. 2014-P-0036, 2015-Ohio-2299, ¶ 47, defined a "bonus" as a "premium paid in addition to what is due or expected. In the employment context, workers' bonuses are not a gift or gratuity; they are paid for services or on consideration in addition to or in excess of the compensation that would ordinarily be given." *Avakian* at *id.*, citing *Black's Law Dictionary* 144 (7th Ed.2000).

{¶19} The Ninth District Court of Appeals has defined "severance pay" as "'an allowance [usually] based on length of service that is payable to an employee on termination of employment[.]'" *Adkins v. Adkins*, 9th Dist. Summit No. 23228, 2006-Ohio-6956, ¶ 13, quoting *Merriam-Webster's Collegiate Dictionary* 1140 (11 Ed.2005).

{¶20} The Ohio Supreme Court has defined a "bonus" as "payment for past services * * *. It does not depend upon the employee's time or effort." *Kaechele v. Kaechele*, 35 Ohio St.3d 93, 96, 518 N.E.2d 1197 (1988).

**{¶21}** In *Wilson v. Wilson*, 9th Dist. Summit No. 24245, 2008-Ohio-6431, the husband contended a lump sum payment he received was a bonus. The trial court found it was severance pay. The Ninth District Court of Appeals affirmed the trial court's finding because the lump sum payment was not based on the husband's past services; rather, the lump sum was predicated on his continued service to the company by training his replacement. Therefore, the lump sum payment was directly correlated to his length of service in that he was to receive two weeks salary for each year of employment. *Id.* at ¶ 16.

**{¶22}** In this case, there was evidence from which the magistrate could base his decision that the $160,000 lump sum payment was a bonus subject to division under the terms of the parties' divorce decree. We are reminded that a reviewing court shall not assert its judgment over that of a trier of fact in areas of credibility and veracity of evidence and witnesses. *Avakian*, 11th Dist. Portage No. 2014-P-0036, 2015-Ohio-2299, at ¶ 28.

**{¶23}** During the hearing, Mark identified the April 10, 2014 email he sent to Delphi in which he proposed changes to the separation agreement. In that email, Mark proposed "a separation/severance payment of $165,000, less applicable holdings, no later than 45 days upon signing the release of claims  * * *." Mark explained in the email that the $165,000 "would be comprised of $65,000 of the Special DCS Cash Award and $100,000 for the shortages paid to [Mark] Heacox in 2012, 2013, and 2014 * * * ." Opposing counsel inquired whether Mark was looking for money for "past bonuses" from Delphi in the amount of $165,000. Mark answered, "Correct." Mark also admitted he told Delphi that he did not want the separation agreement to mention "past bonuses."

**{¶24}** The record shows that Mark and Delphi eventually settled on $160,000. The record also reflects that the Special DCS Cash Awards Program is Delphi's Connections Cash

Awards Program, i.e., the company's bonus program. The magistrate, based on the record and Mark's own testimony, could have found that $100,000 of the $160,000 was for bonus shortages not paid to Mark for years 2012 – 2014, and the remaining $60,000 was for bonus money under Delphi's bonus program. Therefore, under the facts of this case, the trial court did not abuse its discretion when it found that the $160,000 was comprised of bonus money and bonuses from past years and subject to division under the terms and conditions of the parties' divorce decree.

{¶25} The sole assignment of error is overruled. Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas Domestic Relations Division to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

LARRY A. JONES, SR., JUDGE

MARY J. BOYLE, P.J., and
SEAN C. GALLAGHER, J., CONCUR