OPINION
Defendant-appellant Jerry Vona [hereinafter appellant] appeals the January 6, 2000, Judgment Entry of the Domestic Relations Division of the Court of Common Pleas, Stark County, Ohio, which granted appellant and plaintiff-appellee Beverly Vona [hereinafter appellee] a divorce and determined the issues of division of property and spousal support.
 STATEMENT OF THE FACTS AND CASE
Appellant and appellee were married on December 1, 1967. After 31 years of marriage, appellee filed a Complaint for Divorce on May 1, 1998. On July 2, 1998, appellant filed his Answer and Counterclaim. On March 5, 1999, appellant withdrew his Counterclaim. On September 3, 1999, appellee filed an Amended Complaint. A hearing was conducted before the trial court on August 23, 1999, and September 3, 1999. The trial court issued a Final Entry of Divorce on November 22, 1999. On November 30, 1999, appellant filed a Motion for a New Trial. On December 13, 1999, appellant filed a Motion to Modify the trial court's Entry. After a hearing on appellant's Motions, the trial court denied the motions but vacated the Final Entry of November 24, 1999, due to two clerical errors in the Entry. On January 6, 2000, the trial court issued an Amended Final Entry, correcting the two clerical errors in its previous order. It is from the January 6, 2000, Judgment Entry that appellant appeals, raising the following assignments of error:
 I THE TRIAL COURT ERRED IN AWARDING TO APPELLEE A PORTION OF LUCENT TECHNOLOGIES' PENSION EARNED PRIOR TO MARRIAGE.
 II THE TRIAL COURT ERRED IN FAILING TO DIVIDE OR ACCOUNT FOR APPELLEE'S ACCRUED VACATION PAY IN ITS PROPERTY DIVISION.
 III THE TRIAL COURT ERRED IN CHARACTERIZING MR. VONA'S PREMARITAL STOCK AS MARITAL PROPERTY.
 IV THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO AWARD SPOUSAL SUPPORT TO MR. VONA.
 V
THE TRIAL COURT ERRED AS A MATTER OF LAW IN RESERVING JURISDICTION OVER THE ISSUE OF SPOUSAL SUPPORT AFTER SPECIFICALLY FINDING THAT SPOUSAL SUPPORT WAS NOT APPROPRIATE OR REASONABLE.
Initially, we note that we generally review the overall appropriateness of the trial court's property division in divorce proceedings under an abuse of discretion standard. Cherry v. Cherry (1981), 66 Ohio St.2d 348,421 N.E.2d 1293. However, with the enactment of R.C. 3105.171, the characterization of property as separate or marital is a mixed question of law and fact, not discretionary, and the characterization must be supported by sufficient, credible evidence. Chase-Carey v. Carey (Aug. 26, 1999), Coshocton App. No. 99CA1, unreported, 1999 WL 770172; See, McCoy v. McCoy (1995), 105 Ohio App.3d 651, 654, 664 N.E.2d 1012; Kelly v. Kelly (1996), 111 Ohio App.3d 641, 676 N.E.2d 1210. Once the characterization has been made, the actual distribution of the asset may be properly reviewed under the more deferential abuse-of-discretion standard. R.C. 3105.171(D); Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 450 N.E.2d 1140. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Id. The trial court's property division should be viewed as a whole in determining whether it has achieved an equitable and fair division. Briganti v. Briganti (1984), 9 Ohio St.3d 220, 222,459 N.E.2d 896. It is pursuant to this standard of review that we review appellant's assignments of error.
 I
In the first assignment of error, appellant argues that the trial court erred when it awarded a pre-marital portion of appellant's pension to appellee. We disagree. R.C. 3105.171(A)(6)(a)(ii) defines separate property as any interest in real or personal property acquired by one spouse prior to marriage. In general, a trial court is to disburse a spouse's separate property to him. R.C. 3105.171(D). If a trial court awards separate property to the other spouse, the trial court is to enter findings of fact to explain its actions. Id. The trial court divided appellant's pension equally between the parties. However, the parties agree that a portion of the pension, "approximately little over eight percent", TR 7-8, was earned by appellant prior to the marriage and should have been awarded to appellant as premarital property. We agree that the pre-marital portion of the pension was the separate property of appellant and should have been awarded to appellee. We find the trial court's Order to divide the pension equally was contrary to law. Either the trial court should have awarded the pre-marital portion of the pension to appellant or, if the trial court intended to award a portion of appellant's pre-marital property to appellee, it should have entered sufficient findings of fact to explain its actions. Appellant's first assignment of error is sustained.
 II
In the second assignment of error, appellant contends the trial court erred when it failed to divide or account for appellee's accrued vacation pay in the property division. Appellant presented evidence that appellee's employer provides appellee 304 hours per year for vacation, sick days and holidays. Appellant attempted to establish a value for these hours by multiplying appellee's hourly wage, $7.98, times the 304 hours, arriving at a value of $2,425.92. Defendant-appellant's Exh. 21. However, appellee testified that these hours cannot be exchanged for money. Therefore, appellee contends that the hours have no monetary value. We disagree. The trial court's decision not to award vacation, sick days and holiday days in the distribution of assets, was supported by credible, competent evidence. The trial court was presented evidence that these hours had no monetary value and therefore did not constitute an asset or income. We find that the trial court did not error. Appellant's second assignment of error is overruled.
 III
In the third assignment of error, appellant argues that the trial court erred when it characterized appellant's stock as marital property. Appellant contends these stocks are pre-marital assets or are the result of either the reinvestment of dividends earned on those pre-marital stock or were received in the ATT divestiture. We disagree. The party seeking to have a particular asset classified as separate property has the burden of proof, by a preponderance of the evidence, to trace the asset to separate property. Peck v. Peck (1994), 96 Ohio App.3d 731, 734,645 N.E.2d 1300. "Separate property" may be connected to "marital property" through the process of transmutation. Stalnaker v. Stalnaker (Dec. 20, 1999), Stark App. No. 1999CA00059, unreported, 2000 WL 1676. Transmutation is a process by which an act or acts of the one party, the original owner, converts separate property into marital property. Black v. Black (Nov. 4, 1996), Stark App. No. 1996 COA 00052, unreported, 1996 WL 752885 (citing Valentine v. Valentine (Jan. 10, 1996), Ashland App. No. 95COA1120, unreported). When a party challenges a finding of fact concerning the determination of separate property, we review the trial court's decision as to that specific finding under a manifest weight of the evidence standard. Stalnaker v. Stalnaker (Dec. 20, 1999), Stark App. No. 1999CA00059, unreported, 2000 WL 1676. Under this standard, we do not weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether the finding is supported by relevant, competent and credible evidence. See C.E. Morris Co. v. Foley Construction (1978),54 Ohio St.2d 279, 376 N.E.2d 578, syllabus. The trial court found appellee failed to meet his burden to establish the stocks were separate property by a preponderance of the evidence:
Husband claims most of these stocks are his separate property. He has alleged that he purchased the stocks by payroll deduction prior to the parties' marriage. Husband began working for ATT in 1965 and [the] parties were married two years later. The husband has provided no evidence which would enable the Court to trace these stocks to any premarital source. Furthermore, Husband has placed the Wife's name on these stocks; he has treated them as marital property and has, in effect, gifted a one-half interest in them to the Wife. Judgment Entry, pg. 8-9. Appellant testified that he purchased nineteen shares of ATT stock by payroll deduction through his employer, Ohio Bell. Appellant further testified that rather than receiving dividends as they were paid, the dividends were reinvested to buy more shares of stock. Appellant claimed that no marital funds were used to purchase additional shares of stock. However, appellant also testified that he placed the stock in both of the parties' names due to their marriage. Further, appellant presented no documentary evidence to demonstrate that these stocks were pre-marital property. We find the trial court's finding that appellee did not establish, by a preponderance of the evidence, that the above assets were separate property, is not against the manifest weight of the evidence. There was no documentary evidence to support appellant's claim. Further, even if we were to accept appellant's argument that the stocks were separate property at one point in time, there is sufficient, credible evidence of transmutation. Appellant placed the stock into both parties' name based upon their marriage and an apparent intent to share the property with his wife. Appellant's third assignment is overruled.
 IV
In the fourth assignment of error, appellant contends that the trial court abused its discretion in failing to award spousal support to appellant. We disagree. First, while not expressly addressed in the assignment of error, appellant argues that the trial court's finding that appellee's income was $15,877.93 was not supported by the evidence or the trial court's own findings. Appellant points this court to the trial court's finding that appellee works forty hours per week, at $7.98 per hour. At that rate, appellant would earn an annual gross income of $16,598.40. Further, appellant argues that appellee often works overtime and, until June, 1998, earned approximately $225.00 per month selling Avon products. Therefore, appellant contends that appellee's income is at least $19,298.40, i.e. $16,598.49 (exclusive of overtime) plus $2,700.00 per year selling Avon ($225 per month x 12 months). We find the trial court's figure of $15,877.93 was supported by the evidence. Appellee's 1998 W-2 showed that appellee earned $15,877.93 in 1998. The W-2 represented a year's worth of income, including overtime and is a confirmable figure. Further, even if we were to use appellant's prospective, speculative figure of $16,598.40, the monthly income differences of $60.04 per month would not affect this court's analysis of appellant's arguments for spousal support. As to the sale of Avon Products, appellee stopped selling Avon one month after her Complaint for divorce was filed because her daughter, who sold the products at work for appellee, no longer worked. Therefore, appellee no longer sold Avon products and such income should not have been considered by the trial court. Next, appellant argues that, due to the significant difference in the incomes of the parties, it was an abuse of discretion to fail to award spousal support to appellee. A trial court's decision concerning spousal support may only be altered if it constitutes an abuse of discretion. Kunkle v. Kunkle (1990), 51 Ohio St.3d 64, 67, 554 N.E.2d 83. A trial court abuses its discretion when, in addition to making an error of law or judgment, it acts with an unreasonable, arbitrary, or unconscionable attitude. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,219, 450 N.E.2d 1140. Ohio Revised Code section 3105.18(C)(1)(a) thru (n), provides the factors that a trial court is to review in determining whether spousal support is appropriate and reasonable and in determining the nature, amount, terms of payment, and duration of spousal support. R.C. 3105.18(C)(1) provides: (C)(1) In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:
 (a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;
(b) The relative earning abilities of the parties;
 (c) The ages and the physical, mental, and emotional conditions of the parties;
(d) The retirement benefits of the parties;
(e) The duration of the marriage;
 (f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;
 (g) The standard of living of the parties established during the marriage;
(h) The relative extent of education of the parties;
 (I) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
 (j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;
 (k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;
 (l) The tax consequences, for each party, of an award of spousal support;
 (m) The lost income production capacity of either party that resulted from that party's marital responsibilities;
 (n) Any other factor that the court expressly finds to be relevant and equitable.
In its Judgment Entry, the trial court stated that it had considered all of the spousal support factors and found that spousal support was not appropriate nor reasonable. Upon review, we find the trial court's decision was not an abuse of discretion. As discussed above, the trial court found appellee's gross annual income to be $15,877.93 or approximately $1,323.00 per month. Appellee, at trial, testified that she had a net income of $470.00 every two weeks, which is a net monthly income of $1,018.00 TR p. 57 and 93. The trial court found appellee to be 57 years of age and, while she has been treated for heart problems, currently shows minimal heart disease and no physical limitations. Appellee has a G.E.D. and is employed full time. Appellee presented a monthly expense statement in her Financial Statement, filed July 28, 1998, which showed monthly expenses of $854.00. The trial court found appellant to be 57 years of age and to be suffering from a progressive heart disease. Appellant has a high school education and is employed part-time. The trial court also found that "appellant has turned down work and that his health prevents him from working full-time." Appellant argues that he is unable to meet his monthly expenses and has had to forego desired medical treatment. Appellant earns an average of $300.00 per month from his part-time employment and testified that that results in a net monthly income of $245.00. TR at p. 107. Therefore, appellant's annual income is approximately $3,600.00. While not raised by either party, we note the trial court erred in making its finding dealing with the parties' monthly expenses. The trial court found that the appellee estimated her monthly expenses as $1,117.00 as set out on her Exhibit 36. In fact, Exhibit 36 was appellant's exhibit and the $1,117.00 in expenses are listed as appellant's monthly expenses on the exhibit. We do not find this to be plain error requiring reversal, however. The trial court used $1,129.00 as the appellant's monthly expenses, which is only $12.00 more than listed by appellant on his exhibit. Pursuant to the testimony of appellee at trial, her monthly net income barely covers expenses and that is only because she lives with a brother and pays $100.00 in rent. In addition, if one subtracts real estate taxes ($76), church donation ($140), yard care ($25) and pet food ($10) from the appellant's expenses, one gets $866.00 per month ($1,117 — 251 = $866). This $866.00 does not include any mortgage payment since the home that appellant is receiving is paid off. In contrast, appellee will be paying rent somewhere and, even if it is only $200.00 per month, appellee`s monthly expenses would be $1,066.00 if she had similar expenditures to appellant for necessities. Our review of the trial court's decision reveals the trial court considered the pertinent factors in reaching the decision to award neither party spousal support. Appellant urges that he is unable to meet his monthly expenses, whereas appellee will receive a greater sum monthly than appellant. The record indicates all of this information was available to the trial court, including the significant factors that appellant received the marital home and will be able to live in the home without the need to pay rent or make a mortgage payment, and that appellee barely has enough income from employment to meet her basic needs. This court does not find the trial court abused its discretion. Appellant's fourth assignment of error is overruled.
 V
In the fifth assignment of error, appellant argues that the trial court erred as a matter of law when it reserved jurisdiction over the issue of spousal support after specifically finding that spousal support was not appropriate or reasonable. We agree. In Long v. Long (July 24, 2000), Stark App. No. 1999CA00388, unreported, and Reed v. Reed (May 20, 1994), Licking App. No. 93-CA-137, unreported, this court held a trial court may not retain jurisdiction over spousal support when none has been awarded. In so holding, we noted the plain meaning of R.C. 3105.18(E) and the holding in Wording v. Wording (1992), 82 Ohio App.3d 235, 239, wherein our brethren from the Third District held "[w]e find that the trial court does not have the authority to continue jurisdiction concerning the issue of alimony in this matter where it made a specific finding that alimony was not warranted. Its attempt to reserve such jurisdiction for future consideration is error." Upon review, we find the trial court erred in retaining jurisdiction over the issue of spousal support sub judice. Assignment of error V is granted. The judgment of the Court of Common Pleas of Stark County, Ohio, Domestic Relations Division is reversed and remanded regarding the division of appellant's pension and spousal support and is affirmed in all other regards.
Farmer, P.J. and Wise, J. concur. Edwards. J. dissents in part and concurs in part.
EDWARDS, J., Concurring in Part, Dissenting in Part
I agree with the majority's analysis and disposition of the first, second, third and fourth assignments of error. I respectfully disagree with the majority's analysis and disposition of the fifth assignment of error. I would find that a trial court can retain jurisdiction to set spousal support, even if no spousal support is ordered at the time of the final decree, provided that that retention of jurisdiction is supported by the facts of the case. I find that the facts of the case sub judice constitute one of those situations where the facts of the case support the retention of jurisdiction by the trial court. In the case sub judice, there is a long term marriage of 31 years and appellee is fairly healthy and is employed full time. On the other hand, appellant suffers from coronary artery disease, a progressive heart disease and is medically able to work part-time only. Appellant underwent triple by-pass surgery in 1986. While in the year before the hearing the disease had not progressed significantly, prior to that period the disease had worsened. Appellant's medical records indicate that appellant's heart problems are expected to progressively worsen. Should his condition worsen, which is to be expected, he may not be able to continue to work at all. Under these facts, I would find that the trial court did not error in retaining jurisdiction to set spousal support at a later date upon changed circumstances. It is clear that while the trial court did not abuse its discretion in failing to award spousal support at this time, it is reasonably foreseeable that circumstances may change within a reasonable period of time thereby justifying an award of spousal support. Appellant's ability to produce income may likely be impaired by his medical condition not long after the divorce. Therefore, I would find that the trial court did not error nor abuse its discretion in maintaining jurisdiction to set spousal support subsequent to the date of the decree of divorce based upon the evidence in the case sub judice.