{¶ 1} This matter comes for consideration upon the record in the trial court and the parties' briefs. Appellant Leatta Sanor appeals the decision of the Columbiana County Court of Common Pleas, Domestic Relations Division, granting her and Appellee Bruce Sanor a divorce and distributing the marital property. The issues this Court must address are: 1) whether the trial court was obligated to award interest on a distributive award; 2) whether it was proper for the trial court to average the appraisals of two experts; and, 3) whether the trial court properly determined that several items were Bruce's separate property. We conclude the trial court did abuse its discretion when distributing the parties assets since Bruce was given a double credit for several pieces of separate property. Accordingly, we affirm in part, reverse in part, and remand this matter to the trial court for a proper distribution of separate and marital property.
 {¶ 2} Bruce and Leatta were married on September 19, 1980 and lived and worked on Twin Springs Farm. The business was run by Bruce and his brother Richard who had formed a farm partnership. Based on their incompatibility, the parties requested and were granted a divorce after almost twenty-one years of marriage.
 {¶ 3} On April 24, 2001, the trial court conducted a hearing with regard to the division of property. The parties disagreed as to both the value of their land and farming equipment and the classification of separate and marital property. The trial court heard evidence regarding the value of farm equipment and testimony concerning each party's financial situation including their income and expenses and both parties hired appraisers to testify on their behalf. After considering all the testimony, the trial court made several findings of fact and conclusions of law relating to the distribution of the parties' assets.
 {¶ 4} The trial court took the average of the two appraisals for the acreage which contained the marital residence. However, for the remaining three properties, the trial court chose to utilize Bruce's appraisal of $1,800 per acre as opposed to Leatta's $2,595 per acre. Lastly, the trial determined the value of the parties' farm equipment. When doing so, the trial court used an appraisal value of $182,750 but chose to give credit for $45,000 for gifted property to Bruce. The trial court determined that Bruce would receive net property in the amount of $266,090 and that Leatta would receive property in the amount of $16,490. To make the distribution of property more equitable, the trial court ordered Bruce to pay Leatta $124,800 in monthly installments over a period of fifteen and a half years.
 {¶ 5} As her first assignment of error, Leatta asserts:
 {¶ 6} "The trial court erred in not awarding any type of interest on the monies to be paid by defendant to the plaintiff, as the value of the land defendant received would appreciate and should he had [sic] taken a loan to pay the distributive award to plaintiff to ensure an equitable division of property under 3105.171(B), (C) of the Ohio Revised Code, he would have paid interest on said loan and without having to pay the plaintiff interest on said loan and without having to pay the plaintiff interest on the distributive award that cover over 15 ½ years, the defendant pays less than an equal or equitable share under the distribution."
 {¶ 7} In determining whether the trial court abused its discretion by failing to award interest on the distributive award in this case, it would be helpful to first examine the trial court's initial decision to make a distributive award. A distributive award is "any payment or payments, in real or personal property, that are payable in a lump sum or over time, in fixed amounts, that are made from separate property or income, and that are not made from marital property and do not constitute payments of spousal support, as defined in section 3105.18 of the Revised Code." R.C. 3105.171(A)(1).
 {¶ 8} R.C. 3105.171(E) permits the trial court to make a distributive award to facilitate, effectuate, or supplement a division of marital property, or in lieu of a division of marital property to achieve equity between the spouses, or to compensate one spouse for the financial misconduct of the other spouse. In any order for a distributive award, or for the division or disbursement of property, the court must make written findings of fact that support its determination that the marital property has been equitably divided. Id. at subsection (G). See Marcum v. Marcum
(1996), 116 Ohio App.3d 606, 688 N.E.2d 1085.
 {¶ 9} The Ohio Supreme Court has long recognized a trial court is vested with broad discretion in fashioning its division of marital property. Bisker v. Bisker (1994), 69 Ohio St.3d 608, 609, 635 N.E.2d 308. R.C. 3105.171(B) and (C)(1) provide that in a divorce proceeding, all marital property is to be divided equally unless an equal division would be inequitable. In that case, the marital property is to be divided in an equitable manner. Moreover, R.C. 3105.171(E) provides that in order to effectuate a division of marital property, and in order to achieve equity between the parties, the court may make a distributive award.
 {¶ 10} R.C. 3105.171(F) sets forth the factors which the trial court shall consider in making a division of marital property and in determining whether to make, and the amount of, any distributive award.
 {¶ 11} Those factors are:
 {¶ 12} "(1) The duration of the marriage;
 {¶ 13} "(2) The assets and liabilities of the spouses;
 {¶ 14} "(3) The desirability of awarding the family home, or the right to reside in the family home for reasonable periods of time, to the spouse with custody of the children of the marriage;
 {¶ 15} "(4) The liquidity of the property to be distributed;
 {¶ 16} "(5) The economic desirability of retaining intact an asset or an interest in an asset;
 {¶ 17} "(6) The tax consequences of the property division upon the respective awards to be made to each spouse;
 {¶ 18} "(7) The costs of sale, if it is necessary that an asset be sold to effectuate an equitable distribution of property;
 {¶ 19} "(8) Any division or disbursement of property made in a separation agreement that was voluntarily entered into by the spouses;
 {¶ 20} "(9) Any other factor that the court expressly finds to be relevant and equitable."
 {¶ 21} In the present case, both Leatta and Bruce testified regarding their interests in the real property. First Leatta testified Bruce, his brother Richard, and their father purchased 70 acres in partnership. Bruce and his brother then bought out their father's remaining interest. Leatta claims the couple specifically retained a one hundred percent possessory interest in the marital home which sat on the partnership's land. This home was subject to a $69,000 mortgage owed to Farm Credit Services and a $23,000 debt owed to Bruce's brother. There was also outstanding debt owed to Farm Credit Services for a milking parlor.
 {¶ 22} Conversely, Bruce testified that before he was married to Leatta, he, his brother, and their father purchased free and clear 39.9 acres of property, each having a one-third interest. Bruce then testified he and his wife had a one-half interest in the 81.5 acres. In regard to the 39.96 acres, Bruce testified he owned a one-third interest prior to marriage. He then purchased the one-half of the remaining one-third from his father after marriage.
 {¶ 23} With regards to their personal assets and liabilities, both parties again testified. The couple drove a 1993 van, a 1984 pickup truck, and a 1995 pickup truck. These vehicles were available for both Bruce and Leatta's personal use.
 {¶ 24} Leatta admitted she has received a high school education but has had no career training. She had been employed outside of the home doing seasonal work at the rate of $6.50 per hour. However, prior to the divorce, she regularly worked at Twin Springs doing billing, milking cows, keeping the books, and helping in the fields. In addition to her duties on the farm, Leatta was responsible for keeping house, cooking meals, and caring for the children. The farming partnership paid Leatta approximately $200 per month. In addition, Leatta received the benefit of the farm account which covered gasoline, electricity, health insurance, meat, milk, and wear and tear on vehicles. Leatta indicated she was presently paying: 1) $600 per month for rent; 2) $110 per month for electricity; 3) $177 per month for car insurance; 4) $70 per month for the telephone; 5) $40 per month for gasoline; 6) $300 per month for groceries; and, 7) $70 for credit card debt. She claims she must use the credit cards because her monthly income does not cover her expenses. She commented that there was no money to spend on entertainment or recreation.
 {¶ 25} Bruce testified he had earned an adjusted gross income of $29,364 in 2000 and stated that figure was consistent with his earnings for the preceding three years. Bruce then testified he receives a $3,000 per month draw from the partnership but must pay $3,948 per year in taxes from that amount. With regard to his monthly expenses, Bruce testified he makes an $800 payment for the land contract and a $500 payment for other contract debts. He also expends $500 per month for food and clothing for himself and his son. After paying for all the utilities, Bruce explained that he pays a total of $2,400 per month on expenses. In addition to the aforementioned expenses, Bruce has been ordered to pay $517.32 per month for child support. Bruce likewise noted that he owed $6,542 to the partnership in addition to the $40,000 the partnership owed to his father.
 {¶ 26} After relating this information to the trial court, Bruce explained he did not feel he could pay his wife spousal support. Notably, Leatta expressed her desire to maintain the farm as a whole and testified she would be willing to accept a payment schedule to ensure the farm would not be broken up.
 {¶ 27} The trial court determined that Bruce would receive net property in the amount of $266,090 and that Leatta would receive property in the amount of $16,490. Bruce however would be required to pay Leatta $124,800 in monthly installments over a period of fifteen and a half years.
 {¶ 28} The court supported its decision to grant this installment award stating, "virtually all of the parties assets are inextricably linked to the operation of a dairy farm which has been passed down through generations of the husband's family. The Husband's farm partnership interest developed with his father and brother before the parties were married and the Husband's parents have demonstrated clear intentions to convey property to their son at bargain prices in order to keep the farm in the family. The wife has acknowledged the same, and to her credit, indicates that she does not want any portion of the farm liquidated to immediately settle what the court deem to be her marital interest therein."
 {¶ 29} The trial court augments its decision to forego division of the marital assets explaining how the ownership interests in the parties' assets are further complicated in that all the real estate and equipment are co-owned with other persons who are not parties to these proceedings. The trial court acknowledges that debts, including partnership liabilities, encumber all real estate, and that Bruce is jointly and severally liable on the total of the debt made with the brother, Richard. Moreover, the trial court emphasizes the fact that none of the assets are liquid. The trial court reasons that forcing a sale of the real estate would only damage the partnership and harm both the Bruce Sanor family and the Richard Sanor family and create a burden of closing costs, taxes, and other expenses of sale.
 {¶ 30} In light of this reasoning, it appears the trial court properly applied the R.C. 3105.171(F) factors in coming to its conclusion to make a distributive award. However, the more narrow issue to be determined is whether the trial court abused its discretion by electing not to award Leatta interest on the distributive amount.
 {¶ 31} The Supreme Court in Koegel v. Koegel (1982),69 Ohio St.2d 355,432 N.E.2d 206, emphasized the long-established principle of leaving broad discretion in the trial court to determine an equitable property division stating,
 {¶ 32} "The different facts and circumstances which each divorce case presents to a trial court requires that a trial judge be given wide latitude in dividing property between the parties. Because each divorce case is different, * * * equitable need not mean equal. A property award without interest may sometimes be inequitable, but it is not always so. * * * `This is why it is ill-advised and impossible for any court to set down a flat rule concerning property division upon divorce.' * * * We therefore decline to hold that a trial judge is obligated as a matter of law to mandatorily affix interest to those monetary obligations which arise out of a property division upon divorce. To do so would impose an unnecessary restraint on a trial judge's flexibility to determine what is equitable in a special set of circumstances." Id. at 69 citing Cherry v.Cherry (1981), 66 Ohio St.2d 348,355, 421 N.E.2d 1293. See also Hoyt v.Hoyt (1990), 53 Ohio St.3d 177,180, 559 N.E.2d 1292 and Zeefe v. Zeefe
(1998), 125 Ohio App.3d 600, 709 N.E.2d 208.
 {¶ 33} In explaining its distribution of marital equity in this case, the trial court stated the "division of marital property is both fair and equal — $141,290 to each party." Although the trial court does not explicitly express why it chose not to grant interest on the distributive award, its reasons can be inferred from the language of the entry. The trial court emphasizes that Bruce has been allocated one hundred percent of the debts during the pendency of the divorce and into the future. Additionally, since the commencement of this action, the trial court comments on how Bruce has reduced the balances on the land contract, credit card debt, the Farm Credit loans, and his father's loan.
 {¶ 34} Finally, the trial court explains, "the 81.50 acres is merely a land contract interest burdened with significant debt that has priority over the parties' interest. As already stated, farming is subject to many uncertainties, including disease to animals and crops, weather both too wet and too dry, skyrocketing fuel prices, the high cost of equipment and credit, and other factors. Further, [Bruce's] farm earnings in part were facilitated by [Leatta's] labor in the barn."
 {¶ 35} When reviewing a trial court's property division, this court must consider the distribution in its entirety under the totality of the circumstances. Jelen v. Jelen (1993), 86 Ohio App.3d 199, 203,620 N.E.2d 224. A reviewing court cannot reverse the trial court's judgment absent an abuse of discretion; that is, unless the trial court's attitude is unreasonable, arbitrary or unconscionable. Booth v. Booth
(1989), 44 Ohio St.3d 142, 144, 541 N.E.2d 1028.
 {¶ 36} We conclude the trial court applied all relevant factors when making its decision. Not only did the trial court analyze the numerical figures that were placed before it, the trial court took into account the reality of the couple's situation. Both parties have been operating with barely enough income to cover their expenses, let alone recreational activities. When deciding not to award spousal support, the trial court explains that the parties both have limited incomes. However, "Leatta has had an opportunity to develop employment outside of the home." The court concludes "the inescapable fact is that there are insufficient funds to pay any spousal support." This logic can reasonably be extended to the trial court's decision not to grant interest on the distributive award. Bruce simply does not generate enough income to support that type of award. Leatta's first assignment of error is meritless.
 {¶ 37} For her second assignment of error, Leatta asserts,
 {¶ 38} "The trial court erred in not considering the plaintiff's appraisal of the real estate and using it in making its decisions as to the value of the property, thus reducing the marital share the plaintiff should receive as a part of the equitable distribution under 3105.171(B), (C) of the Ohio Revised Code."
 {¶ 39} Since both parties disagreed with regard to the value of the marital property, Leatta and Bruce each hired an appraiser to testify on their behalf. Gene Oesch, the appraiser hired by Leatta, valued the first parcel at $335,000 and valued the remaining two parcels of land at $201,600. In contrast, Russell Kiko, the appraiser hired by Bruce, valued the first parcel at $235,000 and the remaining parcels at $138,000.
 {¶ 40} When determining the value of a marital asset, a trial court is not required to use a particular valuation method. James v.James (1995), 101 Ohio App.3d 668, 681, 656 N.E.2d 399, 407; Focke v.Focke (1992), 83 Ohio App.3d 552, 554, 615 N.E.2d 327. As such, our task on appeal is not to require the adoption of any particular method of valuation, but to determine whether, based on all the relevant facts and circumstances, the trial court abused its discretion in arriving at a value. James at 681.
 {¶ 41} In explaining how it determined the value of the property in this case, the trial court first states that Kiko appraised the 81.50 acres, including the home and the buildings at $235,000, and that Oesch appraised this same property at $335,000. The court resolved the discrepancies by adopting an average of the two appraisals for a value of $285,000. The court explained, "Although Mr. Kiko spent more time on the premises than Mr. Oesch, his appraised value seems to the Court to be low in terms of the comparables he cited. Because of the rather cursory appraisal performed by Oesch, the Court declines to adopt his, choosing instead to average the figures."
 {¶ 42} In Singer v. Singer (May 3, 1996), 3rd Dist. No. 4-95-17, the court concluded the trial court did not abuse its discretion in adopting the referee's recommended "average" valuation between the book value and the market value of the parties' assets. "Having found that it would not be equitable to affix the value of appellant's shares of stock upon one or the other appraiser's determination due to certain aspects of their valuations, the referee then utilized both professional experts' valuations to arrive at the ultimate `average' valuation." Id. at 3.
 {¶ 43} Thus, it appears the trial court in this case did not abuse its discretion in averaging the two appraisals for the first parcel. With regard to the remaining three parcels, the trial court stated that Kiko valued one hundred percent of all three parcels at $138,000 or $1,800 per acre. In contrast, Mr. Oesch valued this same property at $201,600 or $2,595 per acre.
 {¶ 44} Leatta assigns as error the fact that the trial court utilized only the numbers given by Kiko in placing value on these remaining parcels. Leatta's sole support for this argument is that the Kiko's appraisal stated that one of the comparable farms was also a vacant lot and had been valued at a much higher price per acre than the Sanor property. However, what Leatta fails to mention in her brief is that Oesch was never permitted to enter the property that he was appraising and therefore could not examine any of the buildings or equipment. Consequently, Oesch was forced to assess the value of the real estate by examining pictures he had taken from the border of the property.
 {¶ 45} In contrast, Kiko was permitted to do a much more extensive examination of the property and the buildings. At the hearing, Kiko explained that two of the three parcels had some hilly portions which he took into consideration when looking at his list of comparables. He then testified he had a unique relationship with all of the comparables. Specifically, he had either sold them or had purchased them himself and was therefore very knowledgeable about both the topography of each parcel and its ability to be farmed.
 {¶ 46} After hearing testimony from both appraisers, the trial court chose to adopt the numbers generated by Kiko for these two parcels. Other districts have found that making such a choice was not an abuse of the trial court's discretion. In Okos v. Okos (2000),137 Ohio App.3d 563, 739 N.E.2d 368, the Sixth Appellate District affirmed the trial court's decision to accept the appellee's lay opinion over that of the wife's expert appraiser. The court found the trial court was in the best position to judge the credibility of the witnesses, and was free to believe appellee's testimony versus the testimony of the appraiser hired by appellant. Id. at 585.
 {¶ 47} "As an exception to the general rule, an owner is permitted to testify concerning the value of his property without being qualified as an expert, because he is presumed to be familiar with it from having purchased or dealt with it. Bishop v. East Ohio Gas Co. (1944),143 Ohio St. 541, 28 O.O. 470, 56 N.E.2d 164." Tokles Son, Inc. v.Midwestern Indemn. Co. (1992), 65 Ohio St.3d 621, 605 N.E.2d 936, paragraph two of the syllabus.
 {¶ 48} In Zeefe, the court was likewise presented with disparate appraisals. The values were based upon two different methods of appraisal, with each expert relying upon different calculations to arrive at their respective conclusions. The court found that with all the methods being somewhat flawed, it was not unreasonable for the trial court to accept the testimony of the husband's expert if only because he had substantial experience in evaluating over eight hundred businesses in his career and, unlike the wife's expert, personally viewed all three locations. It was within the province of the trial judge to find this testimony "more accurate and more reasonable." Id. at 612.
 {¶ 49} In light of all the relevant facts and circumstances, it is reasonable that the trial court in the present case elected to use the appraisal offered by the expert who was most familiar with both the property and the comparables and who had performed an actual inspection of the property. Leatta's second assignment of error is also meritless.
 {¶ 50} For her third and final assignment of error, Leatta asserts:
 {¶ 51} "The trial court erred in offsetting what it determined was gifted to the defendant from his father, as it was not included in the appraisal of defendant's appraiser, and therefor should not have been deducted for determination of an equitable division of marital property under 3105.171 of the Ohio Revised Code."
 {¶ 52} More specifically, Leatta claims the trial court began its calculations with a value of $182,750 for the farm equipment and divided that amount in half to account for the partnership interest. The trial court then proceeded to reduce the marital share of these assets to $46,375 after crediting Bruce with $45,000 for separate property that had been gifted to him by his parents. Leatta argues the trial court abused its discretion by offsetting the $45,000 from the marital property and then further compounded the error by including several items that had either been traded in for new pieces of equipment or sold for profit.
 {¶ 53} Generally, this Court would review the overall appropriateness of the trial court's property division in divorce proceedings under an abuse of discretion standard. Cherry v. Cherry
(1981), 66 Ohio St.2d 348, 421 N.E.2d 1293. However, with the enactment of R.C. 3105.171, the characterization of property as separate or marital is a mixed question of law and fact, not discretionary, and the characterization must be supported by sufficient, credible evidence. See, McCoy v. McCoy (1995), 105 Ohio App.3d 651, 654, 664 N.E.2d 1012;Kelly v. Kelly (1996), 111 Ohio App.3d 641, 676 N.E.2d 1210. Once the characterization has been made, the actual distribution of the asset may be properly reviewed under the more deferential abuse-of-discretion standard. R.C. 3105.171(D); Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 450 N.E.2d 1140. Pursuant to R.C. 3105.171, a trial court must classify property as marital or separate before making an award of such property. When the parties contest whether an asset is marital or separate property, the presumption is that the property is marital, unless proven otherwise. The burden of tracing separate property is upon the party claiming its existence by a preponderance of the evidence. DeLevie v. DeLevie (1993), 86 Ohio App.3d 531, 536. A determination of traceability is a finding of fact. James v. James
(1995), 101 Ohio App.3d 668. A factual finding of the trial court will be reversed only if it is found to be against the manifest weight of the evidence. Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77. Judgments supported by some competent, credible evidence will not be reversed as against the manifest weight of the evidence. Id. at 80.
 {¶ 54} Accordingly, we must first determine whether the trial court's classification of the parties' separate and marital assets was supported by sufficient, credible evidence. The trial court began with a list of marital property valued at $91,375. The court then determined that Bruce possessed $45,000 worth of separate property which had been gifted to him by his parents. Once a trial court has determined the status of the parties' property, the court must generally disburse a spouse's separate property to that spouse and then equitably distribute the marital estate. R.C. 3105.171(B) and (D). See Fite v. Fite (April 24, 2000) 12th Dist. No. CA99-07-022. In the present case, the trial court properly awarded Bruce his separate property but then went a step further and offset Bruce's separate property from the total value of the marital property. The trial court's decision would have been correct if all assets began on the marital property sheet and only items which were improperly categorized as marital property were then subtracted from the list or credited to Bruce as being separate property.
 {¶ 55} However, not only did the trial court disperse Bruce's separate property to him, the trial court decreased the total amount of marital property to be distributed to both parties even though Bruce's property was not originally classified as marital property. It is contrary to law that the amount of separate property owned by Bruce should have any effect on the calculation of the value of marital property. Bruce should not receive a double credit for the property that was gifted to him by his parents. The only benefit he should receive is the ability to keep his undivided interest in that property.
 {¶ 56} In the present case, if the list of gifted separate property is compared to the list of appraised marital property, the only items for which Bruce could properly be credited are the items which began on the marital property list but were then removed once they were proven to be separate property; namely: 1) the International 5088 tractor valued at $12,500; 2) the New Holland Hay Rake valued at $1,500; 3) the New Holland 853 round baler valued at $3,500; 4) the Cagle 500 gallon trail crop sprayer valued at $1,000; 5) the Kill Bros gravity box wagon valued at $1,200; and, 6) the International 756 trailer valued at $4,000. The value of these items totals $23,700, not $45,000.
 {¶ 57} Thus, it appears that the marital assets have been undervalued by at least $11,300. To further compound this miscalculation, Leatta cites to specific instances where gifted, and therefore separate property, may have become marital property but was never credited to the list of marital assets. As examples, she lists: 1) the New Holland Chopper; 2) the tandem axle trailer; 3) the Gehl blower; 4) the self-feed green chop wagon; and, 5) the straw chopper. Bruce testified at the hearing that these items had either been sold for a profit with the proceeds going to the farm account or traded in for new equipment.
 {¶ 58} Under R.C. 3105.171(A)(3)(a), "marital property" includes "[a]ll real and personal property that currently is owned by either or both of the spouses, * * * that was acquired by either or both of the spouses during the marriage * * *." Significant to the analysis in this case, marital property also includes "all income and appreciation on separate property, due to the labor, monetary, or in-kind contribution of either or both of the spouses that occurred during the marriage * * *." Id.
 {¶ 59} Although it is true, that commingling of separate property no longer automatically destroys its identity as separate property, it has been determined that pre-marital farm equipment which fully depreciated by the time of the divorce and replaced by new equipment purchased from the farming operation proceeds was marital property.Carpenter v. Carpenter (Feb. 8, 2002), 6th Dist. No. WD-01-028 at 2, citing McDonald v. McDonald (Aug. 27, 1998), 4th Dist. No. 96CA912. Likewise in Bryant v. Bryant (Jan. 28, 1999), 5th Dist. Nos. 97CA8, 98CA1, the court found that the appellant did not produce sufficient evidence to trace funds which originated in a separate account. The court explained the appellant's argument ignored the fact that, at least for a few of the accounts, the amounts fluctuated below the pre-marital level, and then were brought back up by indisputably marital funds.
 {¶ 60} The court in Bryant found the trial court did not err in finding appellant had the burden of establishing any funds he claimed as pre-marital, and further, that the appellee's expert's testimony was insufficient to identify those funds. "R.C. 3105.171 provides passive income or appreciation acquired from separate property by one spouse during the marriage remains the separate property of that person. However, here, the evidence placed before the trial court supports its conclusion the funds in the accounts did not represent passive income and appreciation, but rather, were the result of the investment of marital funds and labor expended on those accounts during the marriage. Pursuant to R.C. 3105.171, this comprises marital property." Id. at 5
 {¶ 61} Thus, Bruce had the burden of tracing the newly acquired equipment and proceeds from the sale of the old equipment back to separate property. In order to do so, Bruce would have had to show exactly what each new piece of equipment had cost and how much he was allowed on the trade-in of the older piece of equipment. From this information, the trial court could have calculated the exact percentage of the new equipment that constituted separate property. In addition, Bruce should have offered evidence as to how much money he received from the sale of the other items and how that money was then spent. Bruce failed to provide this information and, without it, the property was not traceable. See Balogh v. Balogh (Dec. 29, 1995), 11th Dist. No. 94-P-0099.
 {¶ 62} Consequently, the trial court did not base its classification of separate and marital property on competent, credible evidence. Assuming it had classified the property correctly, the trial court abused its discretion by offsetting the value of marital property by the amount of property Bruce had been gifted by his parents when that amount was not originally included in the marital property list. Leatta's third assignment of error is meritorious.
 {¶ 63} Accordingly, we affirm in part and reverse in part, and remand this matter to the trial court so that proper calculations regarding the distribution of separate and marital property can be made.
Donofrio, J., concurs.
Waite, J., concurs.