OPINION
{¶ 1} This matter comes for consideration upon the record in the trial court and Appellant's brief. Appellee did not file a brief in this matter. Appellant Jack Crish appeals the decision of the Mahoning County Court of Common Pleas, Domestic Relations Division, granting him and Appellee Elizabeth Crish a divorce. More specifically, Jack challenges both (1) the trial court's determination that a certain piece of property deeded to him and Elizabeth was marital property; and, (2) the adequacy of the trial court's analysis of the requisite statutory factors regarding spousal support. Because the trial court's decision regarding the piece of real property was supported by competent credible evidence, we affirm the trial court's decision in that regard. Similarly, because the trial court properly addressed all of the necessary factors before granting spousal support, we find the trial court provided this court with an adequate record to review. Accordingly, we affirm the decision of the trial court regarding spousal support.
 Facts {¶ 2} The underlying case originated as a divorce action where the issues to be litigated were limited to the following: (1) a determination by the court as to whether the home in which the parties resided was the separate property of Jack or marital property; and, (2) a determination as to the appropriateness, amount, and extent of spousal support for the wife.
 {¶ 3} The trial court heard testimony regarding these two issues. First, the parties disagreed as to whether the home that was deeded to both of them during the marriage by Jack's mom was a gift to them as a couple or solely as an advancement on Jack's inheritance. Ultimately, the trial court decided that the home was marital property since it was gifted to both parties.
 {¶ 4} Second, after hearing testimony regarding the couple's employment history, education, debt, and expenses, the trial court decided that Elizabeth voluntarily quit her full time employment and accordingly, imputed that income to her. Regardless, the trial court found that it would be fair and equitable for Jack to pay Elizabeth spousal support for five years in the amount of $250 per month. It is from these two decisions that Jack now appeals.
 Marital v. Separate Property {¶ 5} As his first of two assignments of error, Jack asserts:
 {¶ 6} "The trial court erred in finding that the real estate at issue was marital property."
 {¶ 7} Generally, we would review the overall appropriateness of the trial court's property division in divorce proceedings under an abuse of discretion standard. Cherry v. Cherry (1981), 66 Ohio St.2d 348,421 N.E.2d 1293. However, with the enactment of R.C. 3105.171, the characterization of property as separate or marital is a mixed question of law and fact, not discretionary, and the characterization must be supported by sufficient, credible evidence. See McCoy v. McCoy (1995),105 Ohio App.3d 651, 654, 664 N.E.2d 1012; Kelly v. Kelly (1996),111 Ohio App.3d 641, 676 N.E.2d 1210. Once the characterization has been made, the actual distribution of the asset may be properly reviewed under the more deferential abuse of discretion standard. R .C. 3105.171(D);Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 450 N.E.2d 1140.
 {¶ 8} Pursuant to R.C. 3105.171, a trial court must classify property as marital or separate before making an award of such property. When the parties contest whether an asset is marital or separate property, the presumption is that the property is marital, unless proven otherwise. The burden of tracing separate property is upon the party claiming its existence by a preponderance of the evidence. DeLevie v.DeLevie (1993), 86 Ohio App.3d 531, 536. A determination of traceability is a finding of fact. James v. James (1995), 101 Ohio App.3d 668. A factual finding of the trial court will be reversed only if it is found to be against the manifest weight of the evidence. Seasons Coal Co. v.Cleveland (1984), 10 Ohio St.3d 77. Judgments supported by some competent, credible evidence will not be reversed as against the manifest weight of the evidence. Id. at 80.
 {¶ 9} In the present case, Jack claims the trial court improperly limited its determination regarding the transfer of the real property to one of an advancement of an inheritance. Jack further argues the trial court failed to adequately consider whether the transfer of property at issue in this case constituted a gift to Jack.
 {¶ 10} Pursuant to R.C. 3105.171, "[s]eparate property" means all real and personal property and any interest in real or personal property that is found by the court to be any of the following:
 {¶ 11} "(i) An inheritance by one spouse by bequest, devise, or descent during the course of the marriage;
 {¶ 12} "* * *
 {¶ 13} "(vii) Any gift of any real or personal property or of an interest in real or personal property that is made after the date of the marriage and that is proven by clear and convincing evidence to have been given to only one spouse."
 {¶ 14} An advancement of an inheritance "is an irrevocable gift made by a person during his or her lifetime to an heir, by way of anticipation of the whole or part of the estate which the heir would receive in the event of the person's death intestate." King v. King
(1992), 82 Ohio App.3d 747, 750, 613 N.E.2d 251, citing Moore v. Freeman
(1893), 50 Ohio St. 592, 593, 35 N.E. 502. A gift is an advancement against a share of an estate only if it is declared in a contemporaneous writing by the decedent or acknowledged in writing by the heir to be an advancement. R.C. 2105.051.
 {¶ 15} It appears that Jack concedes the transfer of real property did not constitute an advancement of an inheritance since no contemporaneous writing could be produced. However, Jack still maintains that the transfer of property from his mother constituted a gift to him alone. Jack claims it was understood among all of the Olsavsky children that Jack would have no interest in his mother's estate after this piece of property was transferred to him. Although that may be true, there was a great deal of testimony given at the hearing on this matter which could easily support the trial court's decision.
 {¶ 16} For example, during the direct examination of Elizabeth, when questioned how she and Jack acquired the home, Elizabeth responded,"It was a gift from his mother to us." Elizabeth later testified that the deed transferred the house to both her and Jack. Elizabeth then testified that she had discussed the transfer with Jack's mother. "Yes, she told me that she discussed the house with her children and that they were in agreement that Jack and I were under financial difficulties and they agreed that they didn't want the house and the house could go to us."
 {¶ 17} Even more compelling is the testimony of Jack's mother. Admittedly, Mrs. Olsavsky testified that her intent was for Jack to inherit the property that she was deeding to him. However, when questioned further about why she transferred the house to Jack and Elizabeth she stated:
 {¶ 18} "Well, they were married at the time, and I thought they had a good marriage. I never thought they would want to get a divorce. And I thought, well, this would be a good thing for them since they needed a house and they had children and they would have a house of their own."
 {¶ 19} She further testified with regards to the transfer to Jack and Elizabeth:
 {¶ 20} "I told them I was coming with a gift and I gave it to them because I thought they would be forever married. And, like I said, they did need a house, and it seemed to be the right thing to do because that's — you want your children to be happy and stay married or whatever. I had no idea that they would be getting a divorce."
 {¶ 21} Mrs. Olsavsky then once again testified that she intended for it to be Jack's inheritance. However, when questioned about whether she sought a legal opinion regarding what would happen if she put both parties' names on the deed, Mrs. Olsavsky stated:
 {¶ 22} "No. I thought that's the way it was supposed to be. I didn't know that you just put one name on it. Since they were married and they were — had children, I thought that was the thing to do. But I didn't know that they were going to get a divorce. I really didn't. Lizzy told me she didn't believe in divorce, and I really liked Lizzy, and I was happy that they were able to have a nice house. I don't — I didn't have a need for another house, and since I was by myself — and I thought it was the best thing to do."
 {¶ 23} Finally, and most significantly, Mrs. Olsavsky later testified during cross examination that she wanted to make the gift to both Jack and Elizabeth as a "family unit." In light of this testimony from the actual grantor of the property, the trial court based its determination that the home was marital property on some competent credible evidence. Accordingly, we can not say the trial court's decision was against the manifest weight of the evidence. Jack's first assignment of error is meritless.
 Spousal Support {¶ 24} As his second and final assignment of error, Jack states:
 {¶ 25} "The trial court erred in failing to apply the statutory factors for spousal support to both parties."
 {¶ 26} More specifically, Jack complains the trial court's analysis of two of the statutory factors, namely: 1) relative earning ability; and, 2) contribution to the other's education, training, and earning ability, was not thorough enough since the trial court only discussed Elizabeth's situation. Jack claims without further and complete analysis of these two factors, the trial court could not make a fair and equitable finding as to spousal support and asks this court to remand this issue to the trial court. Significantly, Jack does not argue that the trial court's ultimate award was either unfair or inequitable.
 {¶ 27} Pursuant to R.C. 3105.18(B), a trial court may award reasonable spousal support in an amount the court deems equitable. Before making the award, the trial court must consider the factors set forth in R.C. 3105.18(C)(1). The trial court's judgment entry must contain reasoning to support a spousal support award "in sufficient detail to enable a reviewing court to determine that the award is fair, equitable and in accordance with the law." Kaechele v. Kaechele (1988),35 Ohio St.3d 93, 97.
 {¶ 28} We have previously held that in awarding spousal support, a trial court must consider all of the factors set forth in R.C. 3105.18(C) and not base its determination upon any one factor taken in isolation.Burkhart v. Burkhart (Dec. 31, 1998), 7th Dist. No. 96-BA-71, at 3 citingKaechele. However, we have also held that a trial court need not specifically review every factor of R.C. 3105.18(C) in detail in its judgment entry, but rather must simply indicate the basis for its award in sufficient detail to enable a reviewing court to determine whether the award was fair, equitable and in accordance with the law. Heslep v.Heslep (June 14, 2000), 7th Dist. No. 825 at 6, Ervin v. Ervin (July 16, 1999), 7th Dist. No. 96-CA-177, at 4.
 {¶ 29} Here, the trial court goes through a detailed analysis of each factor listed in R.C. 3105.18(C)(1). Admittedly, the trial court only discusses Elizabeth's relative earning capability. However, the trial court's analysis benefits Jack since it results in the court imputing income to Elizabeth. Other than the trial court's failure to discuss Jack's relative earning capability, Jack has pointed to no other alleged error committed by the trial court. Jack's second assignment of error is also meritless.
 {¶ 30} Accordingly, the judgment of the trial court is affirmed.
Judgment affirmed.
Waite, P.J., and Vukovich, J., concur.